Robebtson, Oh. J.
Assuming that the defendants could make a contract of insurance without a writing, and that the president or secretary were duly authorized to make one, any agreement, to be binding on them as such, must at least have all the'elements of such a contract. In the case of The First Baptist Church v. The Brooklyn Fire Insurance Co. (28 N. Y. Rep. 161,) the definition given in the court below of what was essential to constitute a valid contract of insurance was approved of by two of the justices of that court (pp, 161, 164,) namely “ That the minds of the parties should meet as to the premises insured and the risk, as to the amount insured, as to the time the risk should continue, and as to the premium.” There are, therefore, at least five ingredients necessary in a contract of insurance, (1.) the subject matter, (2.) the risks insured against,(3.) the amount, (4.) duration of the risk, and (5.) the premium of insurance; a contract of insurance is incomplete which wants any of these.
The only witness whose testimony tended to prove any kind of an agreement, in this case, was the insurance broker (Davis.) He testified that in pursuance of an employment by Mr. Tyler he applied to the defendants “ for a policy of $2500 on stock in the Franklin Mills, at a premium of two per cent, in the name of John Tyler, * * in a few days he called again * * and the risk was accepted at two per cent.” He however explained what he meant by such acceptance by stating that the rate of insurance “was the only matter of discussion between the secretary and” himself “and he consented to take the risk,” The witness then “handed in a policy to be copied * * they were to make a like policy in order that the various policies might correspond.” That policy was not produced in evidence, nor was any evidence given as to its contents, except as to the description of the subject of insurance, on which alone being read to the witness he stated “ that a policy like that, in those particulars, he (the secretary) agreed to give.” On his cross-examination the witness stated that he could not say any thing more” (of what was said) “ than that the risk was taken for $2500, at *156 two per cent,” and that he had stated all that had occurred at the second interview. This was all the evidence of any contract between the parties ; the testimony of the only- other witnesses, as to any negotiation, is adverse to the making of any agreement.
At the close of the evidence the defendants’ counsel asked to have the complaint dismissed, on the grounds that no cause of action in favor of the plaintiff had been proved, and that there was no evidence to warrant a verdict in favor of the plaintiff, which was denied, and exceptions were taken to such denial. The court “ charged the jury that if they should find, upon the evidence that this contract of insurance, as testified to by Mr. Davis, was made with ‘the defendants’ the plaintiff was entitled to a verdictto which charge the defendants’ counsel excepted. This fairly brings up the question whether such an agreement or transaction, as testified to by the broker, formed a valid contract of insurance.
Admitting that the subject, amount and premium of insurance were agreed upon, there is no evidence of what either the risks insured against, or the duration of insurance were to be. Eothing appears to have been said of either fire or other elements, and certainly nothing of the exceptions, conditions and provisions usually contained in all policies of insurance. Eor was any time specified. The previous contract had been for one or two days only. It does not appear by the testimony given by Davis of the conversation, that both parties meant to have a permanent contract of insurance for a definite time, entered into without any written policy. On the contrary it was, if made at all, apparently made temporarily, like the preceding engagement, until a policy could be made out. Mr. Davis states “ they (the defendants or their officers) were to make out a like policy” with one he handed them, yet with the contents of that one we are wholly unacquainted, as they were not proved, except as to the subject matter. The president of the defendants (Manners) testified that “ Mr. Davis threw a policy down on the secretary's desk and said ‘ There is a policy, if you take it.’ ” It would not necessarily *157 follow that a temporary contract, orally made, to last until a policy could be made out, would extend to the time when the, fire actually occurred. Davis said he first applied early in July, and three or four days after the first interview, had the second. He never applied for a policy, although the fire did not take place until the 12th of July, after which the premium was for the first time offered. It would he extraordinary if parties could, after procuring an oral contract of insurance to last until a policy could he made out, lie by and wait until a fire, before paying the premium and claiming the benefit of it. - At all events, the promise, if made, was deficient in the elements of a contract in respect to the risks insured against, and its duration, and such appears by the sole testimony on which the case was submitted to the jury. It was therefore too vague and indefinite to he binding.
The judgment should be reversed with costs to the defendants on the appeal, to abide the event of the suit.
Jones, J. concurred.