STROHN and another vs. THE HARTFORD FIRE INSURANCE COMPANY.

INSURANCE. *Oral agreement to insure held incomplete contract, because dura-tion not fixed.*

The defendant company's-agent agreed to insure one C. by an "open pol-icy" upon tobacco belonging to C. and others, stored in C.'s ware-house, at a certain rate per annum, the amount insured being variable from time to time, as the amount of tobacco in store should vary. The time for which the insurance should continue was not fixed; and no premium was received by defendant's agent, on the ground that he could not determine what amount of premium would become due under the policy. After this agreement, plaintiff's tobacco, stored in said warehouse, was destroyed by fire. *Held,* that in the absence of any definite agreement as to the duration of the risk, there was no complete contract of insurance; and it was not error to nonsuit the plaintiffs.

APPEAL from the Circuit Court for *Rock* County.

*S. A. Hudson,* with *J. B. Cassoday* of counsel, for appellants, argued, among other things, that the oral agreement proved was to be terminated by the issue of the policy, or by notice. The question of time is not involved in it. That was at the will of the defendant. *Kelley v. Com. Ins. Co. of Pa.,* 10 Bosw., 82; *Perkins v. Washington Ins. Co.,* 4 Cow., 664; *Baxter v. Mas-sasoit Ins. Co.,* 13 Allen, 320; *New Eng. Ins. Co. v. Robinson,* 25 Ind., 536; *Davenport v. Peoria Ins. Co.,* 37 Me., 157; *Ellis v. Albany City Fire Ins. Co.,* 50 N. Y., 402; *Walker v. Metropol-itan Ins. Co.,* 56 Me., 371; *Peoria Ins. Co. v. Walser,* 22 Ind., 73. The contract is presumed to be made with reference to an exist-ing custom, and this may be proved to explain it or fix its terms. Chitty on Con., 7th Am. ed., 82, note 1; *Astor v. Un. Ins. Co.,* 7 Cow., 202; *Sewall v. Gibbs,* 1 Hall, 602; Angell on Ins., 48, note 3; 2 Pars. on Con., 535; *Home Ins. Co. v. Favor-ite,* 46 Ill., 268. A contract, silent as to time, is to be construed according to the course of dealing in such business or trade. Angell on Ins., 48, note 3. As in case of checks on bankers.

Chitty on Bills, 150. And promissory notes. *Thompson v. Ketchum*, 8 Johns., 189 ; *Gaylord v. Van Loan*, 15 Wend., 308. In support of the contract in suit they cited *First Bapt. Ch. v. Brooklyn Ins. Co.*, 19 N. Y., 305 ; *Mobile Marine Dock & M. Ins. Co. v. McMillen*, 27 Ala., 77 ; *Lord v. Dall*, 12 Mass., 116 ; *Kennebec County v. Augusta Ins. Co.*, 6 Gray, 207 ; 2 Pars. on Cont., 427 ; *Mansur v. N. E. Ins. Co.*, 12 Gray, 520 ; *Beadle v. Chenango Mut. Ins. Co.*, 3 Hill, 161. Policies are liberally construed to carry out the actual intention of parties. *Fry v. Yeaton*, 1 Cranch., 550 ; *Maryland Ins. Co. v. Leroy*, 7 id., 26 ; *Henshaw v. Mut. Ins. Co.*, 2 Blatch., 99 ; *Fairchild v. The L. & L. Ins. Co.*, 51 N. Y., 65. And most strongly against the company. *Evans v. Saunders*, 8 Porter, 497 ; *McMasters v. Ins. Co. of N. A.*, 55 N. Y., 222. The company neglected to issue the policy as agreed, and if either party should suffer by the neglect, it is the one guilty of laches. Cases above cited and Flanders on Fire Ins., 170 ; *Miner v. Phœnix Ins. Co.*, 27 Wis., 699 ; *Hodgkins v. Montgomery Ins. Co.*, 34 Barb., 213.

*Sloan & McElroy*, for respondents, argued that a policy against fire is strictly a policy on time, and commencement and duration of the risk should be stated with precision. 3 Kent Com., 471. The duration of the risk is one of the essentials of the contract. *Ins. Co. v. Ins. Co.*, 19 How. (U. S.), 320 ; *Church v. Fire Ins. Co.*, 28 N. Y., 153 ; *Tyler v. Ins. Co.*, 4 Robertson, 151.

COLE, J. The court below nonsuited the plaintiffs upon the ground that, as there was no time fixed for the expiration of the policy or continuance of the risk, no complete contract of insurance was entered into between the parties. The correctness of this view of the case is the main question before us ; for, if sustained, it ends the cause.

The complaint states three separate parol agreements for insurance, made by H. N. Comstock for the benefit of himself and the plaintiffs, with O. J. Dearborn as agent of the defend-

ant company. These agreements, as set out in the complaint, are explicit and definite as to the amount insured, the continuance of the risk, and the rate of premium to be paid. And did the proof in regard to the contract come up to and sustain these allegations, there would be no doubt as to the plaintiff's right to recover under the former decision. *Strohn v. The Hartford Ins. Co.*, 33 Wis., 650. But it seems to us that the proof fails to show a valid contract of insurance. The verbal arrangement relied on to show a contract, was in substance this:

Comstock, who effected the insurance, if any contract was made, testified that in the spring of 1872 he contemplated establishing a tobacco warehouse for the storage of tobacco, and, when ready to receive it, and when he had received some, he went to Dearborn in relation to insurance. He told Dearborn that he had received some tobacco in his warehouse, and had advertised to receive and store tobacco for other parties, and keep it insured and sell it, or hold it subject to the order of the owners, as the case might be, and that he wanted to effect some insurance. He says that Dearborn told him that an open policy would be best; the amount perhaps would be increasing or diminishing as time passed along, and he thought it would not be best to issue an ordinary policy of insurance, specifying the amount for a specified time, but that the witness had better have what was called, in insurance parlance, an open policy, allowing the amount to be increased or diminished as witness thought proper. Before the conversation closed, the witness said to Dearborn, "Insure me $400. * * Insure $400 on tobacco in my warehouse, belonging to me, and held by me in store for others. * * Finally he said he would give me $400 insurance in the Hartford in that way. * * Finally he said he would give me $400 upon any tobacco I had then in the warehouse; I asked him what per cent? He said 1¾. I said, 'All right; how about the premium being paid?' Well, he said he didn't know how much it would be, because we didn't either of us know how long the insurance would con-

tinue on that amount; and he said, 'I will call on you when I want the premium; you can pay me when I·call for it.' I said, 'All right.'" This is all that was said in regard to the first contract, made on the 23d of April. On the third of May, the witness testified that he went to Dearborn, and said to him "that I wanted $1,500 more insurance on tobacco in the rink or warehouse; he said, 'Put it in the same open policy as the other; and I said, 'That will be satisfactory to me, with the same premium, yes, sir.' I asked him if that was all right. He said, 'Yes, make it the same as the other.'" The conversation in regard to the third agreement was substantially the same as that in respect to the second, except the witness did not remember whether at that interview anything was said about the payment of premium; but he testified that Dearborn said "he would make the entries and issue a policy in proper time: or he would give me a. policy; or would make out the papers." In the conversations, when anything was said about payment of the premium, the witness said that Dearborn told him he would call upon him for it when he wanted it; witness tendered no money, but said he would pay it if Dearborn wanted it. "His excuse was, that he did not know exactly how much to take, and ·he would not take it just then." And the witness closes his testimony with the statement that "there was nothing said between me and Dearborn as to how long this insurance should run." This is really all the evidence in relation to the several contracts set out in·the complaint; and, it seems to us, it fails to show that the negotiations resulted in a valid agreement, or that the parties came to an understanding upon all the material conditions of the contract. The amount of premium to be paid, and the continuance of the risk, are not agreed upon, nor is there any stipulation in the agreement from which these important elements of the contract could be fixed and determined. The rate of premium and continuance of the policy are certainly important terms in a contract of insurance. Perhaps a contract which either party could terminate at any

time by a notice to the other, might be a valid contract, as intimated by COMSTOCK, J., in *Trustees of the Baptist Church v. Brooklyn Fire Ins. Co.*, 19 N. Y., 305, until the notice was given. However this may be, the general rule is, that to constitute a valid contract of insurance, the minds of the parties must meet as to the premises insured, and the risk; as to the amount insured; as to the time the risk should continue; and as to the premium. Same case in 28 N. Y., 153. Where parties verbally agreed upon all the terms of the insurance except the rate of premium, and a previous insurance was referred to in the conversation, upon the same kind of property in the same place as the property sought to be insured, nothing being said about any change of rate, it was held to be a fair inference of fact that the rate was to be the same as that paid for the previous risk, and that the minds of the parties met upon that amount. *Audubon v. Excelsior Ins. Co.*, 27 N. Y., 216. In *Kennebec Co. v. Augusta Ins. Co.*, 6 Gray, 204, where, under an open policy of insurance on property on board a vessel from New Orleans to Boston, the cotton was insured for the voyage, and also, in addition, against fire from the time of its deposit in a warehouse until it was shipped, the objection was taken that the agreement fixed no certain time when the risk was to commence or terminate. But the court held that the risk commenced the day the cotton was first put in store by the plaintiffs at New Orleans, and that the termination of the whole risk, which included both the hazard of fire on shore and the perils of the sea on the voyage to be performed, was to be upon the safe arrival of the cotton at Boston, the place of its ultimate destination. In marine insurance, where a cargo is insured for a particular voyage, the policy " to continue on the property until landed " (*Mansur v. New England M. M. Ins. Co.*, 12 Gray, 520), there is no difficulty in determining when the risk terminates. In *Walker v. Metropolitan Ins. Co.*, 56 Maine, 371, where the evidence showed an application for a builder's risk, and a permanent yearly risk for a given amount, and that, though no

specific premium was agreed upon, yet it was understood that the amount of premium should be deducted from the sum due the plaintiff from the defendants, the court said enough was done to make a complete contract of insurance. But all these cases, and others of the same character which might be cited, are manifestly in their features distinguishable from the one before us. Here Comstock says the rate of premium was to be 1¾ per cent. ; yet this, it is admitted, had reference to the annual rate. But the more serious defect in the contract is, that no time was fixed for the continuance of the risk. Suppose a bill in equity had been filed, as is sometimes done, to specifically enforce the performance of the contract to issue a policy. How could the court determine the essential elements of the contract which it was called upon to enforce? How long was the risk to continue, one month, two months, six months, or a year? All is uncertain and indefinite upon that point. Again, suppose the company had brought an action to recover the premium due on the contract: how much could it have claimed and recovered? It seems to us it is impossible to say. The property was destroyed on the 21st of May, and it is assumed that this was the termination of the risk. But suppose the property had been destroyed a month later, or not destroyed at all, what then would have been its termination? These tests clearly show, as it appears to us, that while the parties negotiated about insurance, still they did not agree upon all the terms, and that no contract was ever completed so as to become binding upon them. For this was a case in which the duration of the risk might and should have been fixed. It was not one where the period was left indefinite, as it is in a voyage policy. It is true, the parties speak of the policy as an " open policy." Precisely what meaning they attached to these words, is not readily perceived. Mr. May, in his work on insurance, defines an open policy to be one in which the sum to be paid as an indemnity, in case of loss, is not fixed, but is left open to be proved by the claimant in case of loss, or is to be determined

by the parties. Sec. 30; Angell on Fire and Life Insurance, sec. 253. In *Watson v. Swann*, 103 E. C. L., 755, such a policy is spoken of as a "running policy;" but we do not understand that such policies leave the duration of the risk indefinite and indeterminable. There are elements by which the continuance of the policy can be ascertained.

The counsel for the plaintiffs insisted that a policy of insurance silent as to the duration of the risk should be placed upon the footing of a promissory note or check upon a bank, which expresses no time for payment, and yet is held payable immediately on demand. But we do not see how that principle can be applied to a contract of insurance. The continuance of the risk is an important element in determining the rate of premium; and how can the company fix its rates when that factor is left entirely indeterminate? A parol contract of insurance, indefinite as to time and indefinite as to rate of premium, is, as appears to us, incapable of enforcement.

This view renders the rulings of the court on the offers made to prove the usage of the company as to open policies, immaterial. If no complete contract of insurance was made, there can of course be no recovery, whatever may have been the practice of the defendant in its insurance with other parties. In this case the parties did not come to an agreement upon all the terms of the contract, and, in order to sustain it as a valid contract, the court must supply conditions and act upon conjectures.

We think the judgment of nonsuit was correct, and must be affirmed.

*By the Court.* — Judgment affirmed.