JOHN W. SCAMMELL & others *vs.* CHINA MUTUAL
INSURANCE COMPANY.

Suffolk.    January 11, 1895. — October 16, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Marine Insurance — Memorandum — Contract — Expiration by Limitation —
Evidence — Usage.*

In order to bind the parties by a contract of insurance, all the essential elements
of the contract must be agreed upon, but, where it is impossible at the time to
obtain important facts affecting the subject of their dealings, the parties may
make a general agreement to accomplish their purpose as well as they can.

A memorandum, in the form of an application for insurance on the chartered freight
of a vessel, containing a brief statement of particulars and marked "binding"
before the signature of each party's agent, but not stating exactly the amount
of the insurance, or naming the rate of premium, which is left "open for partic-
ulars," and purporting on its face to contemplate the subsequent issuing of a
policy, constitutes a binding contract for the purpose for which it is made.

If a contract of insurance on the chartered freight of a vessel, in the form of a
memorandum which purports on its face to contemplate the subsequent issuing
of a policy, leaves the rate of premium "open for particulars," and the particu-
lars of which the parties are then ignorant and which determine such rate are
shown by the charter party, which is received by the insured ten days before
the vessel sails on the voyage by which the freight is to be earned, he is bound
to furnish the particulars to the insurer within a reasonable time, and, upon his
failure so to do, the contract expires by limitation.

Evidence of the understanding of insurers as to when a contract of insurance is
consummated or becomes binding is not competent to affect the legal interpre-
tation of such a contract contained in a written memorandum executed by the
parties.

CONTRACT, to recover $3,000 for loss of freight of the brig-
antine Peeress, alleged to have been insured by the defendant
under an agreement, the material part of which was as follows:
"About $3,000 insurance is wanted by Scammell Bros., for
account of whom, etc. loss, if any, payable to them or order for
$      on chartered freight per Brigt ' Peeress ' valued at $
amount of charter at and from Santa Fé to a port in the U. K.
or on the Continent.   Priv. of port of call for orders.   Premium,
open for particulars."    Before the signature of each party's
agent appeared the word " binding " ; and at the bottom were
the words, " Send policy to Walker & Hughes, 63 Wall Street,

New York." Trial in the Superior Court, before *Dunbar*, J., who, upon the defendant's motion, at the close of the plaintiffs' evidence, directed the jury to return a verdict for the defendant; and reported the case for the determination of this court. If the ruling was correct, judgment was to be entered upon the verdict; otherwise, the case was to stand for trial. The facts appear in the opinion.

The case was argued at the bar in January, 1895, and afterwards was submitted on the briefs to all the judges.

*C. T. Russell, Jr.,* for the plaintiffs.

*L. S. Dabney & J. D. Bryant,* for the defendant.

KNOWLTON, J. The memorandum relied on by the plaintiffs as a contract is in the form of an application for insurance containing a brief statement of particulars and is marked "binding." At the bottom are the words, "Send policy to Walker & Hughes, 63 Wall Street, New York." On its face it purports to be a preliminary and temporary arrangement, which contemplates the making of a full and definite contract in the form of a policy covering the same subject, with additional provisions. The premium which is to be paid as the consideration for the insurance, and which is perhaps the most important of the terms of the contract, is not fixed, but is left to be agreed upon when further information is obtained. At the time of the application the only information which the parties had in regard to the freight which was the subject of the insurance was derived from a very brief telegraphic message. Several of the particulars given in the application are stated in the most general terms and against the word "Premium" are written the words, "Open for particulars."

It is contended with much force by the defendant, that the memorandum lacks the essential features of a contract in its failure to fix exactly the amount of the insurance, or to state the rate of premium, and authorities are cited which go far towards sustaining this contention. *Hartshorn* v. *Shoe & Leather Dealers' Ins. Co.* 15 Gray, 240, 244, 247, 249. *Orient Ins. Co.* v. *Wright,* 23 How. 401, 408, 409. *Piedmont & Arlington Ins. Co.* v. *Ewing,* 92 U. S. 377, 381. *Kimball* v. *Lion Ins. Co.* 17 Fed. Rep. 625. *Hamilton* v. *Lycoming Ins. Co.* 5 Penn. St. 339. *Strohn* v. *Hartford Ins. Co.* 37 Wis. 625, 631.

In order to bind the parties by a contract of insurance, all the essential elements of the contract must be agreed upon, but in a case like this, where it is impossible at the time to obtain important facts affecting the subject of their dealings, the parties may make a general agreement to accomplish their purpose as well as they can. The memorandum, applied to the admitted facts in this case, shows plainly that the parties desired to enter into a definite contract of insurance in the form of a policy which should clearly state their rights and obligations. They had not sufficient facts in their possession to enable them to determine what would be a reasonable rate of premium, and the defendant declined to fix the premium until further information could be obtained. The risk was to commence soon, and the plaintiffs desired to be protected from the inception of it. The defendant was willing to give them this protection on reasonable terms, and both parties doubtless expected that the additional information necessary to enable them to make the final contract for the voyage would soon be obtained. They therefore agreed that the insurance should be binding to the amount of three thousand dollars temporarily, at a rate of premium which should be fair and reasonable, until such time as the rate could be fixed and the contemplated contract entered into. Each doubtless thought the other would act reasonably by agreeing to a fair rate of premium when the time should come for making the final contract, and each was willing to trust the other to that extent. Plainly, neither of them expected this to be anything more than a temporary arrangement to meet the emergency until further particulars could be obtained. We think this was a binding contract for the purpose for which it was made. If the vessel had sailed, and had been lost at sea before the plaintiffs had a reasonable opportunity to furnish the further particulars, the defendant would have been bound to pay the insurance and the plaintiffs would have been bound to pay a premium at a reasonable rate for the risk as it was when the contract was made. If the plaintiffs, when they received the charter party had communicated the additional information obtained from it to the defendant, the parties would probably have agreed upon a rate of premium, and have embodied their contract as then made in a policy; but if they had then been unable to agree upon the

premium, their temporary contract would have been terminated by its own limitation, the plaintiffs would have been at liberty to seek insurance elsewhere, and would have been liable to pay the defendant at a reasonable rate for the time the insurance had continued. The legal effect of the memorandum is the same as if it stated in terms that the insurance should continue at a reasonable rate of premium until the plaintiffs had an opportunity to furnish the further particulars, that the plaintiffs would furnish them, and that both parties would then endeavor to agree upon a premium and make a contract in the form of a policy. The plaintiffs were bound by their implied agreement to furnish the particulars without unreasonable delay, and upon their failure to do so the preliminary contract of insurance came to an end. This is in accordance with the decision in *Baker* v. *Commercial Union Assurance Co.* 162 Mass. 358, although in that case the agents who made the agreement had their offices side by side in the same building, and it was held upon the conflicting testimony that there might have been a finding either that the parol contract was for insurance to continue temporarily for a short time until one of the agents should terminate it, or that it should continue only until the expiration of a reasonable time to enable the plaintiffs to ascertain in what terms they wished to take policies in writing. It was held that there was no evidence which would warrant a finding that there was a contract of insurance for a year.

In the present case all the additional facts necessary to enable the parties to complete their contract and to put it in the form of a policy were known to the plaintiffs as soon as they received the charter party. This was sent them by the master of the vessel, and they received it about September 12, 1890. The memorandum sued on bears date July 30, 1890. The vessel did not sail on the voyage by which the freight was to be earned until September 22, 1890. The two particulars of which the parties were ignorant which were important in determining the rate of premium to be paid, were the nature of the cargo and the port of destination. The cablegram which furnished their only information on the subject was in these words: " The vessel is fixed to load on the spot. Wood, forty francs. Queenstown, etc. for orders. U. K. or Continent." The charter party shows that the cargo was to

be Quebracho wood in logs, and contains stipulations in regard to their length and how they should be loaded. The charter party also shows that the vessel was to proceed to Queenstown, Falmouth, or Plymouth for orders, and was liable to be ordered to any port in the United Kingdom, or on the Continent between Hamburg and Havre, Rouen excepted. It also contains provisions in regard to the mode of giving the orders. There was uncontradicted testimony that this kind of wood was very heavy, and was considered an undesirable risk. There was also evidence which was not disputed, that the language of the cablegram and of the memorandum, " on the Continent," might include St. Petersburg and ports on the North Sea, for which rates of insurance for a vessel starting at that season of the year would be very high, and that the charter party included only the usual range of ports on the Continent.

The plaintiffs' agent testified, and it was not denied, that he tried to have the defendant's agent fix the rate of premium when the application was presented, but the defendant's agent said he would rather leave it open for particulars of the cargo. There is nothing in the circumstances to show that the rate of premium was to be kept open for any other particulars than those which were shown by the charter party, and these were in the possession of the plaintiffs at their office in St. John ten days before the vessel sailed. It was the duty of the plaintiffs to communicate these facts to the defendant at once, upon their receipt of them. Instead of doing so, they made no communication to the defendant until February 11, 1891, when they made a claim for a total loss. They broke their implied contract when they neglected to communicate these facts within a reasonable time after the receipt of the charter party. Even if they were justified in waiting for the letter from the master of the vessel, which showed the exact quantity of the cargo, they failed to furnish the particulars to the defendant within a reasonable time, for they received this letter on October 27, 1890. This was almost two months before they got information of the loss of the vessel, which came by telegraph on December 16. The vessel was abandoned at sea by the captain and crew on November 16.

There is no ground for the contention that the contract con-

templated a delay in fixing the premium until the voyage should be made to Queenstown, Falmouth, or Plymouth, and orders should be received there to proceed to the port of discharge. To wait for the receipt of these orders and the communication of them to the defendant in the ordinary way would be to postpone the making of the contract of insurance until after the termination of the risk.

Upon the conceded facts of the case, the plaintiffs failed to furnish the defendant within a reasonable time with the facts which were to be the foundation of the contemplated substantive contract of insurance, and the incidental and temporary arrangement made at the time of the application expired by the limitation which was one of its implied terms.

The construction which we put upon this preliminary arrangement in regard to the undertaking of the plaintiffs to furnish additional facts without unnecessary delay, accords with the testimony of all the experts as to the usage in similar cases. This usage almost necessarily results from the fact that the essence of a contract of insurance is to provide indemnity upon the payment of an agreed sum, and not to insure for a price to be determined upon a *quantum valebat* after the termination of the risk.

We see no error in the exclusion of certain answers in the depositions offered by the plaintiffs.* Only one or two of those answers, if received, would have had any tendency to show that the contract made in this case was to continue after the time when the plaintiffs should have furnished additional particulars to the defendant, and these were statements of the understanding of insurers which were not competent to affect the interpretation which the law gives to such a contract. *Odiorne* v. *New England Ins. Co.* 101 Mass. 551, 553. *Haskins* v. *Warren,* 115 Mass. 514, 535, 536.

A majority of the court are of opinion that there should be
*Judgment on the verdict.*

---

* The depositions were those of certain marine insurance brokers and underwriters in New York, and the answers excluded were to questions, in substance, as to when a contract of insurance is understood to be consummated, as to what is understood to be necessary to be inserted in order to the consummation of such a contract, or to make it binding, and as to when such a contract becomes binding.