Whitman, Trustee in bankruptcy, Appellant, vs. Milwaukee Fire Insurance Company, Respondent.

*March 23—April 17, 1906.*

*Insurance against fire: Oral contract: Evidence: Time for commencement of risk.*

1. A written application to an insurance company for a policy of fire insurance, and a promise by the agent of the company to attend to the matter for the applicants, do not constitute a valid contract of insurance *in præsenti.*
2. It is essential to a valid contract of insurance that the time of the commencement of the risk be agreed upon.
3. A valid contract of insurance against fire may be made orally.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

Action on an alleged parol contract of insurance.

The statements in the complaint purport to show this state of things: August 8, 1904, Edward J. Laufenberg and Godfrey Laufenberg, owners of a cheese factory and its belongings, located on certain described land, agreeable to solicitation by defendant's agent, consented to have such property

insured for one year against loss by fire in defendant com--
pany, to the extent of $1,200, at the rate of two and one-half
per centum.   The agent took an application in writing ac-
cordingly, it being then agreed between the Laufenbergs and'
him as such agent that the property should be insured, to·
take effect at 12 o'clock noon of the day aforesaid, the amount
payable therefor being then paid.   October 3d thereafter the
property was destroyed by fire.   There were other allega--
tions satisfying all conditions precedent to the right to re-
cover, if there were in fact a binding contract of insurance
made, and showing that the right in that regard was in the
plaintiff, as trustee in bankruptcy of the assured.

Defendant answered, denying that the agent had authority
to make such a contract as the one alleged to have been made,
or that he assumed to have such, or that he in form made any
such contract.

Further answering, the defendant alleged:

(1) The Laufenbergs applied to the agent for insurance·
on their property at the time stated in the complaint, claim-
ing to own the same, and the agent received their application
in writing accordingly, agreeing to transmit the same to the
defendant, which was done, but they did not pay any money
on account of the insurance, nor was the application accepted
by the agent, nor was any agreement made by him for the de-
fendant company, or otherwise, to insure the property.   The
application was rejected by the company a few days after it
was taken, and notice thereof was given to the applicants.

(2) The so-called contract of insurance was based on a
written application providing that the answers and represen-
tations therein, as to all matters inquired about, were just and
true, and should form the basis for the policy-contract in case
of one being consummated, all answers to be deemed incor-
porated therein, and to constitute continuing warranties.

(3) The premises were then incumbered by mortgages,
whereas the answers in the application were to the contrary.

(4) It was represented in the application that the property cost $1,000, which was known by the applicants to be false.

(5) It was represented in the application that the property was owned by the applicants in fee simple, and that the real estate on which the factory was located was under a perpetual lease to the applicants.   In truth, the factory was not owned in fee simple by them.   They had no perpetual lease thereof. The factory stood on a piece of ground leased to Godfrey Laufenberg for cheese factory purposes only; the Laufenbergs had no title to the land, and no title to any lease thereof.

The evidence was to the effect that the property was considered extra-hazardous, so that it was very difficult to obtain insurance thereon.   Three policies were issued in respect thereto within a short period before the time of the alleged contract, each being canceled or ordered canceled immediately upon or very soon after the company interested being notified of its agent's action in the matter.   The agent who represented the insurance companies, including the defendant, was engaged in the banking business.   The transactions occurred at the banking house, and the policies were kept there.   On the occasion in question the agent informed Godfrey Laufenberg that he could obtain insurance on the property or had found a company that would take the risk.   The defendant was mentioned in that connection.   Upon being so notified, Laufenberg entered the banking house with the agent, and they proceeded to make the necessary application in writing, the agent acting as scrivener and Laufenberg answering such questions as were propounded to him.   The application was made out for a policy carrying $1,200 insurance on the property.   When the form was filled out ready for signature, Laufenberg signed it on behalf of himself and his brother, and it was then left with the agent, who promised to look after the matter.   No money was paid on account thereof. The agent was told to take pay out of the account of the Laufenbergs at the bank, to which reply was made by the agent

that he would see to it.    The Laufenbergs, in fact, at that time had no credit at the bank out of which the insurance could have been paid.    There was nothing said as to when the insurance should commence.    The entire transaction consisted of making the customary application, in writing, for a policy of insurance and a promise by the agent to attend to the matter for the applicants.    He had no authority to accept the application, or to make a contract of insurance.    His authority was limited to taking the application, and transmitting the same to the company for its approval or disapproval. Laufenberg did not read the application.    There was nothing said or done to prevent him from doing so, or to put him off his guard in respect to the matter.    It contains several false representations.    It was stated therein that the factory was located on land held by the applicants under a perpetual lease, whereas the lease ran to the Laufenbergs and their father, and it was contingent upon the factory being maintained.    It was stated in the application that the property was not incumbered, whereas there was a chattel mortgage on the building for $500 and one on the machinery therein for $325.    The latter was known to the agent, but not the former. The Laufenbergs had been accustomed to allow the agent to look after the insurance matter for them.    The evidence further tended to show that when the application was made out, no inquiry was made as to the value of the building, the ownership of the lease, or incumbrances on the property, and that the contents of the application were not known to Godfrey Laufenberg when he signed the same.    On the other hand, there was evidence to the effect that every question answered was read to Laufenberg, and the answers thereto written down as given.

The application was rejected by the defendant promptly after its receiving notice thereof, and prior to the fire.    There was a conflict as to whether the assured were notified thereof or not, prior to the fire.

The jury found specially these facts: The Laufenbergs made an oral contract of insurance October 8, 1904, as stated in the complaint. They were not thereafter notified, prior to the fire, that the application was rejected or the contract canceled.

The court held that the first finding was wholly unsupported by evidence as to the element of time when the contract of insurance should commence, and therefore there was no such meeting of minds in respect to the matter as is essential to a binding agreement. The finding was thereupon, on motion, changed to a negative, and judgment was then rendered in defendant's favor.

For the appellant there were briefs by *Morris, Riley & Dudgeon,* and oral argument by *M. S. Dudgeon.* They contended, *inter alia,* that in the absence of any mention of the time at which the insurance was to take effect, the circumstances and the previous dealings between these parties demonstrate that it must have been understood to be in effect immediately. Kerr, Ins. § 40; 1 Wood, Fire Ins. (2d ed.) sec. 26; 1 May, Ins. (4th ed.) §§ 23, 43B; *Audubon v. Excelsior Ins. Co.* 27 N. Y. 216; *Winne v. Niagara F. Ins. Co.* 91 N. Y. 185; *Scott v. Home Ins. Co.* 53 Wis. 238, 240. Irrespective of previous transactions, and although in the transaction of August 8th no time was mentioned at which the insurance was to go into effect, nevertheless the insurance became operative immediately. 7 Am. & Eng. Ency. of Law (2d ed.) 134; *Audubon v. Excelsior Ins. Co.* 27 N. Y. 216, 223; *Ellis v. Albany City Ins. Co.* 50 N. Y. 402; *Mathers v. Union Mut. Acc. Asso.* 78 Wis. 588, 593; 2 Joyce, Ins. § 1441; 1 Wood, Fire Ins. (2d ed.) sec. 20; *Union Ins. Co. v. American F. Ins. Co.* 107 Cal. 327. See, also, *Potter v. Phenix Ins. Co.* 63 Fed. 382; *Winne v. Niagara F. Ins. Co.* 91 N. Y. 185, 190.

For the respondent there were briefs by *Olin & Butler,* and oral argument by *H. L. Butler.*

Whitman v. Milwaukee Fire Ins. Co. 128 Wis. 124.

MARSHALL, J.  It is considered the determination of the court below, as to there being an entire absence of evidence warranting the jury in reasonably coming to the conclusion that a contract of insurance was made between respondent and the Laufenbergs, cannot be disturbed.  It is absolutely essential to any contract that the minds of the persons representing the two sides of the matter shall consentiently meet upon the major proposition constituting the same; upon a particular result to be accomplished, involving mutual obligations for future performance, or a consideration moving *in præsenti* from one to the other as an equivalent for something later to be rendered by such other or some person to the former or some one.  Contracts of insurance form no exception to this.  One of the prime essentials of such a contract is the time of the commencement of the risk.  We fail to find any proof that such element was agreed upon in the instance under consideration.  It was not even mentioned. One of the Laufenbergs testified at one time during the trial that the agent promised that the insurance should take effect at noon on the day the application was made, but he later admitted that such was not the fact; that a remark of that kind was made to him by the agent on a former occasion of insuring the property, but that on the one in question nothing whatever on the subject was said.  So the want of evidence on that point in appellant's favor, with the evidence against him, shows most conclusively that no contract *in præsenti* was thought of at the time the application was made.  The real transaction, according to the testimony of Laufenberg, was an agreement that the agent would attend, in due time, to the matter of taking such further steps as were necessary to effect the insurance, subject to the action of the respondent. No money was paid.  The only assurance given by the agent, as said by Laufenberg, was that the former "would see to it, take care of it so it would be all right," would "get a policy." That is consistent only with the idea that the only contract of

insurance in contemplation was one to be evidenced by a policy issued in the usual way.

As indicated in *Taylor v. Phœnix Ins. Co.* 47 Wis. 365, 2 N. W. 559, 3 N. W. 584, the presumption arising from the ordinary transaction of making a written application for insurance is that the actors in the transaction had in mind a contract to be closed at some subsequent time. The first step is not supposed to involve binding contractual relations; it suggests only future probabilities in that regard. To displace that, by establishing, as a fact, that something out of the ordinary was contemplated: the actual closing of a contract, precedent to the issuance of a policy in the ordinary way such contracts are made, pretty clear evidence is required showing that the minds of the parties met on that precise proposition. Evidence that the circumstances characterizing an application were closed by a mere promise on the part of the agent to attend to the matter of obtaining a policy of insurance, is, as suggested in the case cited, proof that no contract of insurance was supposed to be closed *in præsenti.*

We need not continue the discussion. The principle involved is pretty fully illustrated in *Wood v. Prussian Nat. Ins. Co.* 99 Wis. 497, 75 N. W. 173, and the early case of *Strohn v. Hartford F. Ins. Co.* 37 Wis. 625. In the first case cited it was said that an oral contract of insurance, like any other, requires a meeting of minds as to all of the essential provisions, leaving nothing to be done but to execute it. The evidence required to show such meeting of minds, when the nature of the contract is of such an extraordinary character as that of an oral one of insurance, must necessarily be pretty definite. It takes evidence sufficient to satisfy the mind to a reasonable certainty to establish in a court of justice the affirmative as to any matter in dispute. When such affirmative is to the effect that an occurrence of an extraordinary character has taken place, circumstances which ordinarily characterize a common transaction of a particular sort

Whitman v. Milwaukee Fire Ins. Co. 128 Wis. 124.

must necessarily be supplemented by other circumstances of considerable weight, to show that a radically different transaction was in the minds of both parties in the particular instance.    There are no such circumstances here.    Rather, there is positive evidence, and circumstances as well, confirmatory of the idea that the Laufenbergs simply made an application for a policy of insurance.

It has been doubted by some writers as to whether an action can be legitimately maintained on an oral contract of insurance, in view of the state of the law at present.    Duer, Ins. 60; 1 May, Ins. § 14.    Most courts, however, in harmony with our own, hold that parties may properly make such contracts under the elementary principle that there is no limitation upon the right of private contract outside of the written law.    Some courts have specialized, without any good reason, as to insurance contracts, holding that one may be complete without the element of time for the commencement of the risk being settled.    *Potter v. Phenix Ins. Co.* 63 Fed. 382.    Such authorities, however, are highly exceptional and are not to be followed.    This court holds to the idea that insurance contracts are to be treated as regards elementary principles the same as others.    There are many authorities elsewhere to the same effect as to the precise question under consideration. The following are a few of the illustrations at hand: *Comm. Mut. M. Ins. Co. v. Union Mut. Ins. Co.* 19 How. 320 ; *Baptist Church v. Brooklyn Fire Ins. Co.* 28 N. Y. 153; *Tyler v. New Amsterdam F. Ins. Co.* 4 Rob. 151; *Hartshorn v. Shoe & L. D. Ins. Co.* 15 Gray, 240, 244, 247, 249; *Orient Mut. Ins. Co. v. Wright,* 23 How. 401, 409 ; *Piedmont & A. L. Ins. Co. v. Ewing,* 92 U. S. 377, 381; *Kimball v. Lion Ins. Co.* 17 Fed. 625; *Hamilton v. Lycoming Ins. Co.* 5 Pa. St. 339 ; *Scammell v. China Mut. Ins. Co.* 164 Mass. 341, 41 N. E. 649.

*By the Court.*—The judgment is affirmed.

CASSODAY, C. J., took no part.