AUDUBON, Executrix, &c., v. THE EXCELSIOR INSURANCE COMPANY.

The record of a court of general jurisdiction, showing a decision that the plaintiff be nonsuited and the action discontinued, establishes no bar to a subsequent suit for the same cause of action.

The decision in the first action having originally been that the complaint be dismissed, was amended, upon summary application by the plaintiff, so as to provide for a nonsuit and discontinuance. The propriety or legality of such amendment is not reviewable upon an appeal taken in the second action, and the amended judgment is the only evidence receivable of the disposition of the former action.

An application for the insurance against fire of certain engravings, similar in all respects to others on which the insurer had recently issued a policy to the same applicant, was made on Saturday: the parties agreed verbally upon all the terms of such insurance except the rate of premium; the previous insurance was mentioned in the conversation, and the insurer promised to make out a policy and send to the assured on the next Monday morning. *Held*, that a jury might well find a present contract to insure at the former rate of premium, and to furnish the written evidence on Monday, which authorized a recovery for a loss happening on the intervening Sunday.

Evidence that the insurers were unacquainted with the manner in which the building was occupied where the insured property was located is too remote to affect the question whether they made the contract, and immaterial if they actually made it.

In determining the question whether the insurer positively undertook to insure, or stated that he would see about it, the jury are authorized to consider the probability of the applicant's being satisfied with the latter answer.

APPEAL by the defendants from a judgment of the Court of Common Pleas of the city and county of New York. The action was brought in February, 1859, on an alleged contract of insurance against fire, of certain engraved plates and unbound letter-press matter, for "Audubon's Quadrupeds of North America," which, it was alleged, the defendants had agreed to insure for one month, from March 4th, 1854, in the shop of the binder, at No. 10 Spruce street, New York. The

answer was a denial of the alleged contract, and the statement of a former action for the same cause, in which, it was alleged, a judgment was rendered for the defendants.

It appeared that the plates, &c., being five sets, worth $300 each, were the property of V. G. and J. W. Audubon, of the survivor of whom the plaintiff was the executrix; and that on the day mentioned, being Saturday, they sent them to the shop of E. G. Taylor, bookbinder, 10 Spruce street, to be bound, and in the afternoon of the same day, about three o'clock, they sent a person in their employ, one Desmond, to the defendants' office in Nassau street, to effect an insurance on them, at a valuation of $1,500, for one month. It appeared that on the 10th of January preceding, the defendants, by an ordinary policy, had insured V. G. and J. W. Audubon, on certain sets of the same work, at the same bindery, at No. 10 Spruce street, for one month, and at a valuation of $1,000, the premium being at the rate of 30 cents the $100. Desmond testified that he found the defendants' secretary at the office of the defendants, and inquired of him whether they would insure the Messrs. Audubon on plates of their Quadrupeds, sent to Taylor's for binding, to the amount of $1,500, and he thought he mentioned No. 10 Spruce street as the place, and that he named one month as the time. He says the secretary's answer was, "We will," and that at the same time he appeared to be writing down what the witness was saying, and he mentioned their having formerly issued a policy on Audubon's works at the same place. The witness had taken with him to, and left at, the insurance office an expiring policy, in the Howard Insurance Company, on Mrs. Audubon's country house, for the purpose of effecting a like policy on that property, in the defendant's company, and the secretary, he said, assented to making such insurance on said property, and agreed that both policies should be sent to the Messrs. Audubon, whose place of business was in Liberty street, the next Monday morning. The premises at No. 10 Spruce street were burned on the following Sunday, and the plates, &c., destroyed. On the Monday

morning the defendants sent to the Messrs. Audubon a policy on the dwelling house, dated that day, the 6th March, but did not send one on the plates. The defendants' secretary and their surveyor, who heard the interview with Desmond, testified that the reply of the secretary, as to the application to insure the plates, was, "I will see about it."

The former action was commenced in the same Court of Common Pleas, by the Messrs. Audubon, against the defendants, in June, 1854, the complaint being similar to the one in this action, and the answer a denial of the alleged agreement. The case was tried before one of the judges without a jury, the evidence being substantially the same as in the present case, and at the close of the trial the judge took time for deliberation, and subsequently made a decision, in writing, to the effect that the alleged agreement was not proved, and concluding with a direction that the complaint should be dismissed, and an order was thereupon entered dismissing the complaint with costs. This was in July, 1855. In June, 1856, the plaintiffs applied, on notice, for an amendment of the decision, upon which an order was made, in November following, in these words: "That the said decision be amended so as, in terms, to grant a nonsuit against the plaintiffs, and the said action is hereby discontinued, on the payment of the defendants' costs to be taxed." This order was affirmed on appeal at a general term. It was admitted that these costs had been paid.

In the present case the defendants made a motion for a nonsuit, at the conclusion of the plaintiff's testimony, and again after the evidence as to the former action had been put in. It was denied in both instances, and the defendants excepted. The plaintiff gave evidence, without objection, by officers of other insurance companies, that where insurance was applied for by the same parties, on property which the company had then recently insured, and the application was accepted, the same rate of premium as on the former policy was adopted, unless a different rate was mentioned. The defendants offered to prove that their secretary and surveyor were unacquainted

with the manner in which the premises at No. 10 Spruce street and the adjoining premises were occupied, but the evidence was excluded, and the defendants' counsel excepted.

The judge submitted to the jury whether the plaintiff's or the defendants' version of the evidence was the true one, holding that in the former case the plaintiff would be entitled to a verdict, and he added the following remarks, which were excepted to by the defendants' counsel: "That the witnesses having spoken, not positively but to their best recollection, as to the language used on the occasion in question, you may, in determining what really was the language used, take into consideration, in addition to the testimony of the witnesses upon that point, the object and mission of Desmond, the probability of his being satisfied with the answer the defendants claim to have made, and the probability of their secretary making such an answer." The jury found, in answer to specific questions, that the defendants did agree to insure the plates at the binders from the 4th day of March, when the application was made, for one month, at a premium of 30 cents on $100; and they found a general verdict for the plaintiff for $2,232.77. After an affirmance at the general term, this appeal was brought here.

*J. M. Van Cott*, for the appellants.

*J. H. Reynolds*, for the respondent.

BALCOM, J. The defendants having answered, the court had the right to receive a verdict for a greater sum than the judgment demanded in the complaint, and render a judgment against the defendants for the full amount of the verdict, because the same was consistent with the case made by the complaint and embraced within the issue. (Code, § 275.)

The decision in the action in favor of John W. Audubon and Victor G. Audubon, tried before Judge INGRAHAM, was not a bar to this. No judgment was ever entered in that action, and the order dismissing the complaint therein, with costs, was amended, prior to the trial of this, so as, in terms,

to grant a nonsuit against the plaintiffs and discontinue that action on the payment of the defendants' costs.

The first time the defendants' counsel moved for a nonsuit, it was on the ground that there was no proof that the plates were destroyed. The plaintiff then proved they were destroyed, every one of them. The defendants' counsel then renewed his motion to dismiss the complaint, which was denied, and he excepted. The plaintiff gave further evidence, and again rested, when the defendants' counsel renewed his motion for a dismissal of the complaint, which was denied, and an exception noted. The defendants' counsel then gave some evidence, and "again renewed his motion for a nonsuit," which was denied, and he excepted. He did not renew such motion again, or specify any ground on which he made it, at any time, except the first, when he moved on the sole ground that there was no proof that the plates were destroyed, which ground was then obviated by proof that the plates were destroyed. These motions, therefore, did not present the questions, whether the plaintiff should have proved he paid, or offered to pay, the premium for the policy contracted for, and that he gave the defendants notice of the loss, or furnished them with proof of the same. If the defendants' counsel had objected to a recovery on those grounds, they might have been obviated, if necessary, by the requisite evidence; and we cannot presume the plaintiff was unable to give such evidence.

The exception taken by the defendants' counsel to the charge of the judge to the jury was general, and, therefore, is untenable, if any portion of the charge was correct.

It is too plain to admit of discussion that some portions of the charge were correct, and I am of the opinion no part of it was erroneous. It was proper for the judge to instruct the jury to find upon particular questions of fact (Code, § 251); and whether their verdict was against evidence was a question the judge who presided on the trial might determine; and the decision of the special and general terms of the court in which the action was tried, that the verdict was not against evidence,

settles that question. There is no provision in the Code authorizing this court to review that decision.

For these reasons, I am of the opinion the judgment of the court below should be affirmed.

DENIO, Ch. J. The judgment in the former action would have been a bar to the present suit, but for the subsequent order of the court. But the Court of Common Pleas had juris-diction over the record in that action. It could set aside the decision of the referee for irregularity, or on the ground of surprise or newly-discovered evidence, or it could order it amended if a mistake had occurred, or it could order a new trial on the merits; and it could, moreover, at any time before final judgment, allow the plaintiff to discontinue, upon terms. The grounds upon which the amendment was allowed do not appear from the case in the present action, or from any papers before us on this appeal; but if they did, we could not review the merits of the order. The record of the final disposition of the action does not come before us for review, upon this appeal, for it was introduced on the trial collaterally, as a piece of evidence; and if it should appear that the order was erroneous, or that the proceeding to obtain it was irregular, still it would not be void. As the judgment stands corrected by the order, it is not conclusive upon the cause of action, for a judgment of nonsuit leaves the plaintiff at liberty to sue again for the same cause, and the effect of a discontinuance is no greater. So that in whichever aspect the amendment is regarded, the amended record does not furnish a bar to the subsequent action. The power to amend results from the juris-diction of the court, as a court of record. (*Lee* v. *Curtiss*, 17 Johns;, 86; *Lansing* v. *Lansing*, 18 id., 502.) In courts of special and limited jurisdiction, not of record, this rule is other-wise; and, hence, where a case was tried before a justice, with-out a jury, and he took time to give judgment, it was held that the action could not be discontinued, and that the trial was a bar, whether any judgment was given or not. (*Hess* v. *Beekman*, 11 Johns., 457.) It is proper to say very distinctly,

in order to prevent misapprehension, that we give no opinion upon the propriety or abstract legality of the amendment which was made in the instance before us. It, no doubt, required very peculiar circumstances to be shown to render it proper to change the effect of a judgment rendered upon the merits, upon a summary application, in the manner pursued in this case. All that we decide in that respect is, that that court having the power to amend in a proper case, and having amended this record, the amended judgment is the only evidence we can receive as to the disposition of the former action, and that, as amended, the judgment is not a bar to the present action.

The question upon the merits arises upon the denial of the motion for a nonsuit; and, upon reviewing that decision, we must assume that the testimony of Desmond disclosed the true character of the interview between himself and the defendants' secretary. There was no dispute as to the authority of that officer to do what he professed to do on that occasion. It was shown that the Messrs. Audubon were in the habit of sending sets of their works to be bound by Taylor, at his place of business, at No. 10 Spruce street, and of procuring insurance thereon for the short time which it would require to bind and return them. About two months before the contract relied on in this action, they sent certain sets to this binder and procured a policy thereon from the defendants, for $1,000, for one month. That risk expired without any loss having occurred. They then sent to Taylor five sets more for the same purpose, and immediately dispatched Desmond to the defendants, to have those insured for a month, which was, apparently, the time required for binding them. He stated to the secretary the purport of the errand, in a sufficiently precise manner to embrace all the terms of a policy, except the rate of premium they were willing to pay. In the conversation which occurred, reference was made to the former policy of January, upon other sets of the plates: the secretary himself spoke of it, and he said positively that the company would insure the plates upon which insurance was then desired, and would send the policy

Audubon *v.* Excelsior Insurance Company.

to the owners, who had a known place of business near by, on the following Monday morning. This, I think, was an agreement to insure presently, and to furnish the written evidence as soon as it could conveniently be prepared. Both parties knew the premium which had been paid for a risk of precisely the same character, two months before. As nothing was said about any change of premium, it was a fair inference of fact that it was to be the same, and that the minds of the parties met upon that amount. This embraced all the essential terms of a perfect contract of insurance upon that risk. The only question, then, is whether, by a fair construction of that contract, the risk was to commence presently or two days afterwards, when the policy was to be sent. I feel confident that the former was what was intended. The property was very valuable for its bulk, and quite combustible, and an owner of such property, who did not intend to be his own insurer, would certainly desire to have it constantly covered by insurance. The delay was for the insurer's own convenience, and not for that of the owners of the property; and if the company were unwilling, for any reason, to enter into a contract which should immediately protect it, it was the secretary's duty, knowing, as he must have done, what the desire of the owners was, to have said that the risk would be taken to commence from and after the future period when the policy was to be delivered. I do not say that, in a case of another character, where time would be less material, and where delay would not involve any hazard, a contract would be considered made after its terms had been settled, and the parties were waiting for a written contract to be drawn up. I put this case upon the peculiar nature of the contract of insurance, the plain intention of the insured and the probable understanding of the parties. Probably there would, in contracts upon other subjects, be a *locus penitentiæ* until the instrument should be actually signed. It is true that in this case the consideration was not paid, but the owners of the property were ready to pay it, and the natural course of business would be to pay it when the policy should be delivered. In the meantime it was a debt

against the owners, for which credit was given until the delivery of the policy. Therefore, assuming Desmond's evidence to be true, I am of opinion that a present contract of the nature claimed was made between the defendants and the owners of the property.

It is objected that notice of the fire and proof of loss were not furnished according to the provisions of the defendants' printed policies. Such a point was not made on the trial. The controversy, up to the time of the motion for a nonsuit, related wholly to the proof of the contract, and it was the duty of the defendants' counsel, if he relied upon the want of these forms, to have suggested the point. The motion for a nonsuit, under the circumstances, was not calculated to suggest to the court or to the plaintiff's counsel any such defect. Besides, the ground taken by the defendant, that no contract of insurance existed, would be held to dispense with the preliminary proofs. (*McMasters v. The Western Ins. Co.*, 25 Wend., 379; *O'Niel v. Buffalo Ins. Co.*, 3 Comst., 124.

The other exceptions are not well taken. If the defendants actually made the contract imputed to them, it could not be avoided by the consideration that they had not made proper inquiries; and, as evidence upon the question whether such a contract was made or not, it was too remote. The remarks of the judge which were excepted to, were not objectionable. They called attention to the very circumstances which have led me to think that the contract was one for present insurance, and they were quite suitable to be taken into consideration by the jury.

It is said that the verdict is too large. We could not interfere if this was so. But we do not see the matter in the light suggested by the defendants' counsel. The owners of the plates sold them, for the most part, by the single copy, and their price was $300 a copy, making $1,500 for the five sets. This, with interest, after sixty days from the loss, would make the amount of the verdict. The judgment should be affirmed.

DAVIES and EMOTT, Js., took no part in the decision; all the other judges concurring,

Judgment affirmed.