THE PEOPLE'S INSURANCE COMPANY

v.

STEPHEN PADDON ET AL.

1. INSURANCE CONTRACT BY PAROL.—There is no statute in this State affecting the validity of a verbal contract for insurance, and the rules of the common law present no impediment to the making of such contracts, but it is indispensable that all the essential requisites of such contracts should be complied with.

2. ESSENTIALS OF AN INSURANCE CONTRACT.—There must be a meeting of minds of the respective parties at some instant of time upon the subject-matter of the insurance, the parties thereto, the amount of insurance, the limit of the risk, including its duration in point of time, and extent in point of hazards assumed, the rate of premium, and generally upon all the circumstances which are peculiar to the contract and distinguish it from every other, so that nothing remains to be done but to fill up and deliver the policy on the one hand, and pay the premium on the other.

3. STATEMENT—CONTRACT IN QUESTION.—Where the insured merely called at the office of appellant's agency and left his insurance book, with a memorandum requesting it to be delivered to one of the firm of appellant's agents, who was at the same time the agent of the insured in placing insurance upon his goods, and afterwards spoke to such agent upon the street about the insurance, but did not give any specific directions in regard to the same, there was no such meeting of minds as would constitute a valid contract.

4. AGENT OF BOTH PARTIES.—The policy of the law is against a person acting as agent for both the insurer and insured. If he so act, the contract may be avoided by either party.

APPEAL from the Superior Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding. Opinion filed April 7, 1881.

Messrs. GARY, CODY & Gary, for appellants ; that to consti-
tute a valid contract of insurance the minds of the parties
must meet as to the property, risk, amount insured, time the
risk is to run, and the premium, cited Trustees v. Ins. Co. 28
N. Y. 153 ; Thayer v. Ins. Co. 10 Pick, 326 ; Christie v. Ins.
Co. 3 Cas. Ct. of Sessions, 360 ; Ins. Co. v. Holzgrafe, 53 Ill.
516 ; Strohn v. Ins. Co. 37 Wis. 625 ; May on Insurance, 41 ;
Flanders on Fire Insurance, 116 ; Wood on Fire Insurance,
16 ; Sandford v. Ins. Co. 11 Paige Ch. 547.

A person cannot be the agent of both the insurer and in-
sured: Ins. Co. v. Ins. Co. 17 Barb. 132; Michode v. Girard, 4
How. 513; Thornton v. Irwin, 43 Mo. 153; Bently v. Ins. Co.
17 N. Y. 42⅝; Beal v. Kirman, 6 La. 407; Broker v. Ins. Co.
2 Mason, 371; Church v. Ins. Co. 1 Mason, 345; Vanderpool
v. Kerns, 2 E. D. Smith, 170; Flanders on Insurance, 210;
Copeland v. Ins. Co. 6 Pick, 198; Story on Agency, § 211;
Dunlap's Paley on Agency, 33; Ex parte Bennett, 10 Ves. 381.

Admissions of an agent bind his principal only when made
during the continuance of the agency, in regard to a transaction
then pending: Baptist Church v. Brooklyn Fire Ins. Co. 28
N. Y. 159; 1 Greenleaf, Ev. § 114; Hayes v. Houston, 86 Ill.
486; N. W. R. R. Co. v. Hack. 66 Ill. 238.

Messrs. HUNTER & PAGE, for appellees; as to the question
of agency, cited Com. Ins. Co. v. Ives, 56 Ill. 402; Lycoming
Ins. Co. v. Ward, 90 Ill. 545.

As to admission in evidence of the proofs of loss: Knicker-
bocker Ins. Co. v. Gould, 80 Ill. 388; Lycoming Ins. Co. v.
Rubin, 79 Ill. 402; Ætna Ins. Co. v. Maguire, 51 Ill. 342;
Ins. Co. v. Schottler, 39 Ill. 71.

McALLISTER, P. J.   At the time in question, and for several
years prior thereto, Stephen Paddon & Co., the plaintiffs below,
were and had been dealers in the city of Chicago, in sal-soda
and other chemicals.   There were two warehouses in which
they were accustomed to keep their merchandise—one being
the Empire Bonded Warehouse, and the other the Empire Free
Warehouse, as they were called, but they were adjoining build-

ings. Stephen Paddon himself always attended to the matter of procuring insurance on the goods of his firm. There was during most of said time a street insurance broker of the name of Miller, with whom Paddon was intimately acquainted, who acted as agent for plaintiffs in procuring for them all their insurance. Paddon would inform him of the goods and the amount desired; then Miller would select the company or companies, determine the rate of premium, and even the extent of the risk, and from time to time send in his bills for premiums, etc., and plaintiffs would pay them, they scarcely ever knowing in what company or companies the insurance was taken. Paddon would tell Miller all he wanted was for him to put them in good companies, and they trusted wholly to him to do so. He was not only plaintiffs' agent, but the relations between Miller and Paddon were very confidential.

Miller became a member of the firm of W. G. McCormick & Co., but just when that was does not appear, though it must have been a year and a half before February, 1880. That firm were not only insurance brokers, but were the local agents in the city of Chicago of the defendant insurance company, and four or five other companies. However, when Miller went into that firm, Paddon transferred the insurance matters of his firm to that of W. G. McCormick & Co., and they became his agents, though Miller personally attended to the business of plaintiffs' insurance precisely as he had done prior to his connection with McCormick & Co.

Plaintiffs claim that they had, February 12, 1880, 487 casks of English sal-soda in said Empire Free Warehouse, which was worth four thousand dollars. They had had merchandise in the Empire Bonded Warehouse, but at this time had sold out what they had there; but January 19, 1880, they had through McCormick & Co., as local agents of defendant company obtained a certificate of insurance in defendant company of one thousand dollars on merchandise in said bonded warehouse, the sal-soda being in the other warehouse. Now, it is claimed by plaintiffs, and that is the cause of action set out in the first count of their declaration, that by a verbal contract made February 13, 1880, between them and the defendant

corporation represented by W. G. McCormick & Co., that certificate was transferred so as to cover the sal-soda aforesaid, in the Empire Free Warehouse, which was destroyed by fire on the evening of February 14, 1880. And plaintiffs also claim, that by the same contract or arrangement by which such transfer was made, on said 13th of February, they made a verbal contract with the defendant corporation, represented as aforesaid, whereby the defendant agreed to insure said merchandise in said Empire Free Warehouse from said last mentioned date, for such time as plaintiffs might elect, in the sum of one thousand two hundred and fifty dollars, in consideration of a premium to be paid by plaintiffs to defendant, at the rate of seventy-five cents per annum on each one hundred dollars. This latter verbal contract constitutes the cause of action set out in the second count of the declaration. So that, as it seems to us, the causes of action set out in both counts depend upon the fact and validity of such verbal contract.

There is no statute in this State affecting the validity of such a contract; and the doctrine is now very generally recognized in this country that the rules of the common law present no impediment, providing that all the requisites prescribed by those rules as indispensable to every contract, be complied with. As respects a verbal contract of insurance, those requisites are substantially these : The minds of the respective parties must, at some instant of time, have met upon all the essentials of the contract. Those essentials are : the parties thereto ; the subject-matter of insurance ; the amount for which it is to be insured ; the limits of the risk, including its duration in point of time, and extent in point of hazards assumed ; the rate of premium ; and generally upon all the circumstances which are peculiar to the contract and distinguish it from every other, so that nothing remains to be done but to fill up the policy and deliver it on the one hand, and pay the premium on the other. May on Ins. § 43 ; Hamilton v. Lycoming Mut. Ins. Co. 5 Penn. St. 337 ; Audibon v. The Excelsior Ins. Co. 27 N. Y. 216.

Now, considering the plaintiffs as having no agent, but acting solely through Paddon as party of the one part, and the

defendant as being represented by its local agents, McCormick & Co., as the party of the other part, to the alleged verbal contract of insurance in question, and it is perfectly clear, from the evidence, that there was no meeting of the minds of the respective parties to such supposed contract at any instant of time before the loss occurred, upon any of the essential elements of such a contract. Although the record in this case contains four hundred and eighty-four pages, the result of a system which operates as a monstrous imposition upon appellate judges, yet we have found that all the material facts as to the making of the alleged contract are within a very small compass. Stripped of all the immaterial and obscuring circumstances foisted into the case, they are simply: that on the 12th day of February, 1880, Paddon, finding that his firm was carrying too much insurance—that is, that their insurance was in all about $7,500, when they had of merchandise only the 487 casks of sal-soda, worth not to exceed $4,000—took a policy of insurance which they had in the Farmers' Ins. Co. for $3,500, and he wrote on the face of it " cancel," or " canceled." He then wrote in pencil on one of the pages of his open policy-book, these figures and words: " 2500 on Empire not bonded 1000." Then, on that day or the next, the 13th, he took said book, and, as we would infer, said policy also, and near four o'clock in the afternoon went to the office of W. G. McCormick & Co., and inquiring for Miller, was told by the clerk there that he was not in. Whereupon, Paddon, without giving any directions or saying a word about insurance, left said book and probably the policy so marked, with the clerk, saying he would call again and see Miller, and went away. He neither saw or had any communication with any member or employe of the firm of McCormick & Co. until near four o'clock of the afternoon of the 14th, which was Saturday, when being on his way to the train to go home, he accidentally met Miller in the street, and told him, in substance, that they had been taking account of stock, and they found they had too much insurance, and he had left his book at the office to fix it. His instructions were in his book. Miller said he had done so. It appears from Miller's version of the conversation, that Paddon at that time

said they had bought some more goods and would probably want some more insurance—to let things stand as they were until Monday, when he would be in and see about it. We do not find that Paddon contradicts this statement at all; in fact, he corroborates it. The fire occurred on the night of said 14th of February.

It will be perceived that there had been no communication from Paddon to these local agents of defendant, which can by any possibility amount to a proposition on the part of plaintiffs, or even a wish, desire, direction or request, that said certificate mentioned in the first count of the declaration should be so changed as to cover any merchandise contained in the Empire Free Warehouse; or for a contract or policy of insurance by defendant in the sum of twelve hundred and fifty dollars, or any other amount on the terms set out in the second count or any other terms. The figures and words written in pencil viz : "2,500 on Empire not bonded 1,000," are utterly meaningless for any such purpose. If they had any cabalistic meaning as between Paddon and Miller, such meaning is not shown by any evidence; besides, Miller testifies that he did not see them at all. On this point the want of any communication from Paddon to Miller or any of his firm of any proposition, direction or request, to have the one thousand dollar certificate of insurance so changed as to embrace the merchandise in the free warehouse, or to have further insurance by defendant, or especially any such contract as is set up, is clear beyond any doubt.

It is also clear to a moral certainty, that when Paddon and Miller met in the street on the afternoon of the 14th, and had the brief conversation referred to, the latter said nothing to the former respecting any such change of said certificate of insurance, or concerning the alleged new contract of insurance in the defendant company for twelve hundred and fifty dollars, or any other amount. Then how can it be said that the minds of the respective parties had met before this loss occurred, upon any of the essentials of such a contract ? It is immaterial what Miller had done, so long as it was not beforehand directed by Paddon, or communicated to him afterwards, and

assented to by Paddon. It was neither directed beforehand or communicated by Miller and assented to by Paddon afterwards—that is before the fire. One of the two things must certainly be true: either there was no attempt to transfer said certificate, or enter into the books of McCormick & Co. the memorandum of such contract of insurance as having been made by the defendant company, as claimed by plaintiffs, on the thirteenth of February, and both were in fact done on Monday after the fire, and dated back, as of the thirteenth; or Mr. Miller did it of his own motion, on the thirteenth as the agent of Paddon, and without any communication, proposition or direction, or anything on the subject between them. But the policy of the law is against a person thus acting as agent for both the insurer and insured. The interests of such parties are antagonistic. " He cannot be the agent of both parties in the same transaction. If he so act, the contract may be avoided by either party." May on Ins. Sec. 125. These propositions are fully supported by the authorities cited by appellant's counsel.

It follows from these views, that the court below erred in not granting the defendant's motion for new trial, and for that reason the judgment must be reversed and the cause remanded.

Reversed and remanded.