## Manchester Fire Assurance Co. v. Insurance Company of the State of Illinois.

1. CONTRACTS—*Must Have the Approval of Both Parties.*—An agent of both parties to a proposed contract can not bind either party thereto, but the proposed contract must have the approval of both principals, after full knowledge of the facts, to bind either. This rule is not limited to cases where the agent is openly acting for both parties, or where he has actually favored one at the expense of the other.

2. SAME—*Where Both Parties are Represented by the Same Agent.*— The true test is whether the agent owes fidelity to each party, and has a discretion to exercise for either party, in a matter where there is a conflict of interest between the two principals, so that a strain might be placed upon the probity of the agent, and he might be under a temptation to betray or neglect the interests of one of the parties.

3. INSURANCE—*Oral Contracts for Re-insurance.*—Where, in an alleged oral contract for re-insurance, the name of the owner of the property insured was not stated, nor the fact or names of third parties interested in the original insurance, nor the hazards covered thereby, nor the time the re-insurance was to be in force, nor the premium to be paid, *held* the essentials of a contract were not agreed upon.

4. SAME—*Where the Contract Binds Both Parties at Will.*—Where a contract of insurance is intended to bind each party only so long as it chooses, the insurer may cancel at will by notice to the other party.

5. SAME—*Notice of Cancellation by Telephone.*—Under the facts in this case, *held* cancellation was effected by notice over the telephone.

6. WITNESS—*Foundation for Impeachment.*—Where a witness on cross-examination denies or does not admit making at a stated time and place a statement in conflict with his testimony, a witness called to impeach him in that respect should be asked directly whether at that time and place said witness did so state. The entire conversation can not be called for by the impeaching party.

Assumpsit, on a contract of insurance. Appeal from the Circuit Court of DuPage County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the April term, 1900. Affirmed. Opinion filed October 8, 1900.

THOMAS BATES, attorney for appellant.

WALKER & PAYNE, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court. The Manchester Fire Assurance Company brought this

610     APPELLATE COURTS OF ILLINOIS.

VOL. 91.] Manchester Fire Assurance Co. v. Ins. Co. of Illinois.

suit against the Insurance Company of the State of Illinois to recover upon an alleged contract of oral insurance, filing a declaration containing two special counts and the common counts. Defendant pleaded the general issue. The parties stipulated that any evidence competent under proper pleadings might be introduced. A judgment for plaintiff was reversed in 77 Ill. App. 673. On a second trial there was a verdict and a judgment for defendant, from which plaintiff now appeals. For convenience we shall designate the parties as the Manchester Company and the Illinois Company.

On October 5, 1896, the Manchester Company issued a certificate of insurance, No. 1006, to William H. Harper, for $5,000 on grain and seeds of all kinds contained in Pacific " A " elevator, Chicago, for one year, at the rate of two per cent, and made the loss, if any, payable to the American Trust and Savings Bank, as its interest might appear. On October 10, 1896, the Manchester Company issued a certificate of insurance, No. 1008, to W. H. Harper for $9,500, on grain and seeds of all kinds contained in Pacific " B " elevator, Chicago, for one year, at the rate of two per cent, and made the loss, if any, payable to the Illinois Trust and Savings Bank, as its interest might appear. On October 13, 1896, John E. Shepard, superintendent of the Cook county department of the Manchester Company, called up by telephone Charles H. Nichols, of the firm of Nichols & Newberry, insurance agents in Chicago, and claims he then made with him a contract of insurance, and upon that supposed contract this suit is brought. Shepard's version of the conversation was that he told Nichols the Manchester Company desired re-insurance to the amount of $2,500 on the grain in each of Pacific elevators "A" and " B;" that Nichols said he would look it up and see if his company was open to accept the re-insurance, and after a moment told Shepard he would accept for the Illinois Company $2,500 insurance on grain in each of these elevators, re-insuring the Manchester's liability to that extent. Nichols testified that Shepard asked him over the telephone

if they would re-insure the Manchester for $2,500 on grain in each of the two elevators "A." and "B"; that he looked it up on the books, and replied that they would. Nichols & Newberry made occasional reports to the Illinois Company which were called daily reports. Reports from Nichols & Newberry of these two items of re-insurance were received by the Illinois Company at its main office in Rockford on the morning of October 19th. The secretary of the Illinois Company at once called up Nichols & Newberry by telephone, and directed the immediate cancellation of this insurance. Newberry took certain steps that day to cancel the insurance, which will be discussed later on. On October 26, 1896, there was a loss by fire on this grain. The Manchester Company paid certain sums to those it had insured, and then demanded contribution from the Illinois Company, and, that being refused, brought this suit, claiming $3,171.85.

1. Nichols & Newberry were agents, not only for the Illinois Company, but also for the Manchester. It is the general rule that one who is the agent of both parties to a proposed contract can not, by his action, bind either party, but in such case the contract must have the approval of both principals, after full knowledge of the facts, before it binds either. The rule is stated and illustrated, and supporting cases cited, in Empire State Insurance Company v. American Central Insurance Company, 138 N. Y. 446; London & L. Fire Insurance Company v. Turnbull, 86 Ky. 230; People's Insurance Company v. Paddon, 8 Ill. App. 447.

2. The Manchester Company sought to avoid this principle by proof that the authority of Nichols & Newberry as agents of the Manchester was restricted, and they had no power to write insurance for the Manchester in that part of Chicago where these elevators were situated. It claims the court below erred in rejecting proof it offered on that subject. The trial court did at first sustain objections to this testimony, but a little later changed its rulings and received full proof of these restrictions, as appears more fully in the record than in the abstract. If appellant failed

612    APPELLATE COURTS OF ILLINOIS.

VOL. 91.] Manchester Fire Assurance Co. v. Ins. Co. of Illinois.

thereafter to ask one or two questions to which objections had been at first sustained, the fault is its own. Nichols & Newberry held a written appointment from the Manchester making them in general terms its agents at Chicago, and a written certificate of like tenor from the insurance department of the State. The proof further shows they were orally appointed by the Manchester Company to the Twenty-second street agency; that no other oral limitations were placed upon their authority, but that under the rules of the Chicago Board of Underwriters the expression, "Twenty-second Street Agency," limited them to the territory south of Twenty-second street. The elevators in question were north of that limit in the down town district. Nichols & Newberry had their office in the down town district, and, notwithstanding said limitation, occasionally wrote insurance in the Manchester on property in that district. The Manchester Company here claims that as this property was not within the limits of the Twenty-second street agency, Nichols & Newberry not only were not but also could not be its agents with reference to insurance on this grain, and therefore the rule before stated does not apply. In many of the cases announcing the rule the agent was openly acting for both parties in the particular transaction, but we do not think the principle is limited to such cases. The true test is whether the agent owes fidelity to each party to the contract, and has a discretion to exercise for either party, in a matter where there is a conflict of interest between the two principals, so that a strain might be placed upon the probity of the agent, and he might be under temptation to betray or neglect the interests of one of the parties. When Nichols & Newberry were asked to re-insure the Manchester they had a discretion to exercise in behalf of the Illinois Company in determining whether it was wise or advisable for the latter to write insurance on grain in these elevators. There may have been facts and circumstances connected with the ownership of the property, the incumbrances thereon, the extent of the risk assumed by the Manchester, and the duration of its policy, which Nichols & Newberry

as agents of the Illinois Company, were in duty bound to investigate before deciding to take the risk, but which it was for the interest of the Manchester should not be inquired into.   It may be due inquiry would have disclosed such facts as to make it the duty of Nichols & Newberry to consult the officers of the Illinois Company (whose home office was within reach at any moment by telephone), before undertaking to bind it.   The conflicting interests of the two companies might easily place a strain upon the integrity of Nichols & Newberry.   Suppose their business for the Manchester at the Twenty-second street agency was much more valuable to Nichols & Newberry than that which they did for the Illinois Company.   When they learned the Manchester wished this re-insurance, would they not be inclined to favor the employer through whom they made the more money, and whose good will was the more valuable to them? Would they not in such case be inclined to exercise their discretion whether or not to re-insure in accordance with the wishes of the Manchester?   Would they not be tempted to make less diligent inquiry into the condition of the risk, than if they were only agents for the Illinois Company, and had no relations with the Manchester?   It is immaterial whether they did in fact exercise their discretion too carelessly in favor of the Manchester.   Perhaps that can not be known.   The Illinois Company was entitled to the unbiased judgment of agents not also in the pay of the Manchester. In view of the double agency and allegiance of Nichols & Newberry we hold the Illinois Company could not be bound till it assented to the insurance after full knowledge of the facts.   Upon learning part of the facts it at once directed the cancellation of what Nichols & Newberry had done, and we are of opinion it was never bound.

3. Were the essentials of a contract of re-insurance agreed upon?   The name of the owner of the property was not disclosed.   Nichols & Newberry were not informed that third parties had an interest in the insurance, as mortgagees or otherwise.   The amounts for which the Manchester had insured the property were not stated, and there was noth-

614    APPELLATE COURTS OF ILLINOIS.

VOL. 91.] Manchester Fire Assurance Co. v. Ins. Co. of Illinois.

ing to show how much or what proportion the Illinois Company would be bound to contribute in case of partial loss. The duration of the original contract was not stated, nor the length of time the re-insurance was to run.   Perhaps most important of all, the particular hazards against which the Manchester had insured were not disclosed.   No premium was paid, and no amount or rate was agreed upon. It is argued this would be governed by the rate fixed by the Chicago Board of Underwriters, but the Illinois Company was not a member of that board, and therefore was not bound by its rates.   Suppose the Manchester had filed a bill against the Illinois Company to compel the latter to issue to the former a written policy or certificate of this re-insurance.   How would the court determine for what period of time the policy should run, what particular hazard should be covered, what rate of premium should be inserted as the consideration, and the names of the owner and mortgagees insured?   From what language used by Shepard and Nichols over the telephone could the court obtain these essentials of a contract?   Suppose the Illinois Company had sued the Manchester at law to recover the premium of this insurance.   Where can the basis be found in the language of Shepard and Nichols upon which the amount for premium to be recovered could be calculated? We hold the essentials of a contract were not stated in that conversation, and therefore re-insurance was not effected. Strohn v. Hartford Fire Insurance Company, 37 Wis. 625; People's Insurance Company v. Paddon, *supra;* 1 May on Insurance, sections 43, 43 A and 43 B.

4.   Jennings, assistant re-insurance clerk for the Manchester, testified that five or six days after October 13th he made correct copies of the two insurance certificates the Manchester had issued to Harper, and carried them to the office of Nichols & Newberry and laid them on the desk of Jackson, their bookkeeper, and called his attention to them. Jackson denied this and Nichols testified he did not see or know of any such papers being left at their office.   Newberry testified by deposition, and his attention was not

called to this subject. There does not seem to have been any preponderance of evidence that such copies were delivered at the office of Nichols & Newberry. But if they were so left that would not avail here. The re-insurance was effected, if at all, by the conversation over the telephone on October 13th. If what was then said did not create a contract, then after the details of the insurance desired were furnished, it was necessary to show the subsequent assent of Nichols & Newberry to re-insure upon the basis proposed by such writing, in order to bind the Illinois Company, and no such subsequent assent is claimed. If it were shown that copies of said certificates of the insurance by the Manchester to Harper had been delivered to Nichols & Newberry, and that the latter then verbally agreed to re-insure the Manchester to the extent of $2,500 on each of said certificates in the Illinois Company for the length of time the original insurance still had to run and at a rate of premium named, or that Nichols & Newberry then issued to the Manchester a certificate of re-insurance, stating said details, all the elements of a contract would appear. But this was not done. Appellant has set out in its abstract what it treats in argument as two certificates of such re-insurance issued by Nichols & Newberry in the name of the Illinois Company to the Manchester. The record, however, shows these were only the reports Nichols & Newberry sent to the Illinois Company, and that they were obtained from appellee's attorneys at the trial. They had never been sent to or been seen by the Manchester, and were mere private memoranda between the Illinois Company and its agents. Moreover, the record shows parts of said reports were in blue pencil, added at Rockford by an officer of the company upon their receipt there, and other parts in black lead pencil, evidently added at some later period. With the pencil parts of said reports omitted from consideration, the rest still does tend to show Nichols & Newberry, before they made these reports, had received from some source further information concerning the details of the re-insurance than was expressed in the conversation over the telephone. We

**616**    Appellate Courts of Illinois.

Vol. 91.] Manchester Fire Assurance Co. v. Ins. Co. of Illinois.

are, however, of opinion that these reports are insufficient to show that Nichols & Newberry agreed with Shepard to all the essentials of a valid contract.

5. If a valid contract of re-insurance was made on October 13th we hold it was subject to cancellation by the Illinois Company at will. The time for which the Illinois Company was to carry this insurance was not stated. If without that element the contract is valid it can only be on the ground that it was intended to be binding on each party only so long as it chose. It would be monstrous to say that if the Manchester chose to hold the Illinois Company for five, ten or twenty years, and tendered the premium for that time, and had itself contracted insurance for that period, the Illinois Company, by the few words spoken over the telephone, had placed itself where it could not withdraw. Suppose on October 23d, the Manchester had tendered to Nichols & Newberry the premium for ten days and directed them to cancel the re-insurance, or had informed Nichols & Newberry it did not wish to re-insure any longer; how could the Illinois Company, have compelled the Manchester to leave the re-insurance still in force or to pay premium for any longer period ?

6. If there was a valid contract of re-insurance the proof justified a verdict that it was canceled on October 19th. On the morning of that day the reports of this re-insurance sent in by Nichols & Newberry were received at the home office at Rockford. Penfield, secretary of the company, at once called up the office of Nichols & Newberry in Chicago, by telephone, and got either Newberry or Jackson, and told him to cancel this re-insurance at once. Newberry immediately called up the office of the Manchester by telephone and asked for Shepard, and was told he was not in. During business hours in the afternoon of that day he did the same thing again, and received like information. He recognized the voice at the telephone as that of McCabe, and said to him, " Will you kindly take this memorandum for Mr. Shepard ? We have been ordered by our company to cancel the insurance on Pacific elevators A and B, and we must immediately call off the lines. I want the matter

attended to at once as we can not let it run over." To this the reply was made, " All right, the memorandum will be given Mr. Shepard." What was said by Newberry at his end of the telephone was corroborated by Jackson, who heard it. Shepard testified he received no such information. McCabe testified he had an indistinct recollection he did receive the message; that it was his impression he did, and that he either sent it through the proper source and it was neglected at the other end (meaning, as he explained, that he may have placed a memorandum on Shepard's desk, and it may have been overlooked or lost), or that he himself neglected to do it. This he testified had been his impression ever since the occurrence, though he admitted he told Dudley, manager of the Manchester in Chicago, that he did not think that he received that message. He explains he said this by way of giving himself the benefit of the doubt, as he felt he would lose his position if he admitted he received the message. McCabe was employed in Shepard's department, and was his assistant, and was in the habit of receiving orders over the telephone in the office both for the writing and the cancellation of insurance; and when he received an order to cancel insurance it was his duty to transmit it to the person who had authority to act in the matter. Under that state of the proof the jury was warranted in finding that notice of the cancellation was given McCabe, and that notice to him was notice to the Manchester. If notice was so given, we hold this insurance, if ever in force, was canceled. We deem it unnecessary to consider the further position of the Illinois Company that under the general commission held by Nichols & Newberry, as agents of the Manchester in Chicago, notice by Penfield to Nichols & Newberry to cancel the insurance was itself notice to the Manchester.

7. Appellant asked McCabe if he did not at a certain time and place tell Dudley positively that he did not receive the message and McCabe at first replied that he did so state, and then said he qualified it by saying, " I don't think I received that message." Appellant then called Dudley to impeach McCabe, and after fixing the time and place of the

conversation with McCabe, put this question: "I will ask you to state what was said there." The court sustained an objection to the question. The ruling was correct. The same question should have been put to Dudley that was put to McCabe, viz., whether at the time and place named McCabe stated positively that he never received any telephone communication from Newberry in regard to this risk. (1 Rice on Evidence, 626.) Appellant was not entitled to the entire conversation, merely for the purpose of impeachment.

8. Appellant's instructions were properly refused. They ignored the question of the effect of the double agency of Nichols & Newberry; they ignored the proof tending to show notice to McCabe was notice to Shepard and to appellant, and the proof as to McCabe's authority and duties in the Manchester office, and would have practically withdrawn that proof from the jury. The only complaint made in argument as to appellee's instructions is that "appellee's seventh instruction was wholly improper, misleading, and should not have been given." We do not consider those words a discussion of the instruction or that they present any question for our consideration. They do not point out in what respect the instruction is improper or misleading. But we have considered the instruction, and find it substantially in harmony with the views herein expressed. On the whole we think the verdict and judgment right.

The judgment is therefore affirmed.