JOHN R. DAVIS LUMBER COMPANY, Respondent, vs. SCOTTISH UNION & NATIONAL INSURANCE COMPANY, Appellant.

SAME, Respondent, vs. CALEDONIAN INSURANCE COMPANY, Appellant.

SAME, Respondent, vs. CONTINENTAL INSURANCE COMPANY, Appellant.

*November 7 — November 24, 1896.*

*Insurance against fire: Verbal contract: Meeting of minds: Evidence.*

1. A binding contract of insurance may be made without the payment of any premium, or even the making of any report, to the insurer, but in order to establish such a contract the evidence must show that the minds of the parties have met so as to leave nothing to be done thereafter except to execute it as made. There must be an application; the terms and property must be specified; and, if the application is made to an agent representing several companies, the particular company or companies to carry the risk and the amount each is to carry must be designated, and each by its agent or otherwise must agree to take the risk.

2. Where it was contemplated that the agent to whom the application was made should seasonably investigate and report whether the companies would carry the risk, and the applicant until notified of their decision could have withdrawn the application without becoming liable for the premium if the risk was accepted, the minds of the parties had not met.

APPEALS from judgments of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action on alleged verbal agreements to insure property owned by plaintiff against loss by fire. The answers put in issue the making of the contracts. The evidence shows that E. W. Winchester, an insurance agent at Phillips, Wisconsin, received an application for insurance on plaintiff's property. He applied to John West, at Oshkosh, to place a part of such insurance, giving him a form of policy, specifying the items of property and rate of insurance. On the 18th day of June, 1894, West applied to Sylvanus Palmer, agent for

the defendants at Oshkosh, Wisconsin, giving him the form of policy, to place $10,000 of such insurance among companies represented by him. Palmer did not then agree to place such insurance. The understanding was that he should see what he could do respecting the matter, and notify West later. The evidence further shows that the property was outside the district in which Palmer was authorized to write policies binding defendants; that, for the purpose of determining whether defendants would take the risk or not, he distributed the amount applied for as follows: $2,500 to the *Continental Insurance Company*, $5,000 to the *Scottish Union & National Insurance Company*, and $2,500 to the *Caledonian Insurance Company*. There is evidence tending to show that he sent the usual daily reports to the companies in the usual way; also, that such reports ordinarily indicate that the policies have been written up. The evidence further shows that, in two or three days after the first meeting between Palmer and West, the former notified the latter that defendants would not accept the risks. Part of the loss sued for had occurred in the meantime. The *Caledonian Insurance Company* notified Palmer, before his last meeting with West, that it would not accept the application, and the other companies did the same, or approved of Palmer's notice to West to that effect, thereafter. At the close of the evidence each defendant moved the court to direct a verdict, which was denied. Verdict was rendered against each defendant, and there was a motion to set aside each such verdict as contrary to the evidence, and for a new trial, which motions were denied. Judgments were rendered against the defendants separately, from which separate appeals were taken.

*H. W. Chynoweth*, for the appellants.

For the respondent there was a brief by *Phillips & Hicks*, attorneys, and *M. H. Beach*, of counsel, and oral argument by *M. C. Phillips* and *Mr. Beach*.

MARSHALL, J.   A binding verbal contract of insurance may be made without the payment of any premium, or even the making of any report, to the insurance company. That has been repeatedly decided by this court.  *Zell v. Herman F. M. Ins. Co.* 75 Wis. 521;  *Campbell v. Am. F. Ins. Co.* 73 Wis. 100.   But, to make such a contract, there must be a meeting of minds between the parties thereto, so as to leave nothing to be done thereafter but to execute it as made. There must be an application, though not necessarily in writing.   The terms and property must be specified.   If the application be made to an agent representing several companies, the particular company or companies to carry the risk must be designated, with the amount each is to carry, and each, by its agent or otherwise, must agree to take the risk, that is, must make answer to the application, accepting it, direct or otherwise, by verbal communication, or by posting such communication.   Without all these elements there can be no binding contract.  *Sheldon v. Hekla F. Ins. Co.* 65 Wis. 436;  *Rossiter v. Ætna L. Ins. Co.* 91 Wis. 121.   When the application is made it is subject to withdrawal till answered in one of the ways indicated, or something equivalent, and till so answered it cannot be said that the minds of the parties have met.   1 Wood, Fire Ins. §§ 18, 20, 21, and cases cited.

The mere statement of the essentials of such a contract is sufficient to decide this case.   Here, though there was an application for insurance upon specified property at specified rates, the companies and distribution between them were not agreed upon, and there was neither an acceptance of the application by either, nor an agreement to accept. It was contemplated that the agent to whom the application was made should seasonably investigate and report whether the companies would carry the risk or not.   He made such report in their behalf by declining the application.   There is a large amount of evidence in the case show-

ing what occurred between the agent and an office called
the compact office, at Oshkosh, through which, for certain
purposes, insurance written in the vicinity of Oshkosh by
certain companies, including defendants, was customarily
reported; but very little of it, if any, is really material to
this controversy. The facts are that defendants, neither
through Palmer nor otherwise, ever agreed to carry the
insurance. The only communications that passed between
the parties were, as stated: First, an application by West
to Palmer on behalf of plaintiff, coupled with an agreement
by the latter to report what could be done in the matter;
and, second, a report declining such application.

The case is unlike *Campbell v. Am. F. Ins. Co., supra,*
where the agent authorized to make contracts and issue
policies binding on the company made an agreement, com-
plete in every particular, but stated that the company might
refuse to carry the risk after it was reported. Under such
circumstances this court held that the contract was binding
until canceled and notice of the cancellation given to the
insured. This is also unlike *Eames v. Home Ins. Co.* 94 U. S.
621, where there was an application to the agent for insur-
ance at a specified rate, a reply thereto that the company
would not take the risk at such rate, but would at a higher
rate, specified, to which the applicant replied, accepting the
company's terms. That, obviously, made a contract. There
was nothing whatever left to do but to execute it; hence, in
the action against the company to compel specific perform-
ance by issuing the policy, plaintiff prevailed. *King v. Hekla
F. Ins. Co.* 58 Wis. 508, and many other cases in this and
other courts, to which reference might be made, are to the
same effect.

The question, in such cases, whether a complete agree-
ment exists, is frequently not free from difficulty; but the
principles governing its solution are the same as in respect
to other contracts. The burden of proof is on the party

alleging its existence to show, by satisfactory evidence, that the negotiations were concluded, and contract in fact made, by which the parties became mutually bound. An infallible test is to determine whether both parties are bound. Unless the assured is obligated to pay the premium on tender of the policy, the company is not to deliver it, or to pay the loss if one occurs. Here, up to the time Wèst was notified by Palmer that defendants would not accept the risk, plaintiff or his agent could have withdrawn the application, and defendants would have had no claim against him. It follows, obviously, that plaintiff was not bound up to that time; hence, necessarily, defendants were not.

In all the cases where recovery has been sustained on a verbal contract of insurance, it will be found that the evidence either conclusively showed that there was a complete meeting of minds between the parties, or that there was evidence sufficient to warrant the court or jury in finding the existence of a complete contract. As we view this case, there is no evidence tending to show that the alleged contract was completed; hence, the motion to direct a verdict as to each defendant should have been granted. Failing to do that, the court should have set aside the verdicts and granted a new trial.

*By the Court.*— Each of the judgments appealed from is reversed, and the causes remanded for a new trial.