Wood, Respondent, vs. Prussian National Insurance Company, Appellant.

*April 16 — May 3, 1898.*

*Insurance: Agreement by agent to keep policy renewed.*

An oral agreement by an insurance agent with a person to whom he is issuing a policy that he will never suffer the insurance to lapse, but will give notice when it is about to lapse, and will renew the insurance either in the same or in some other company represented by him, is not binding upon the company which issued such policy, unless the agent was acting within his actual or apparent authority for such company and it was so understood by the insured, or the contract was afterward ratified. It is the contract of the agent in his personal capacity.

Appeal from a judgment of the circuit court for Dane county: R. G. Siebecker, Circuit Judge. *Reversed.*

Action for damages for failure to renew a policy of fire insurance by the defendant company, pursuant to an alleged oral agreement to do so. The question raised by the pleadings, upon which the case turned, is, Was the alleged oral agreement made between plaintiff and defendant acting by its authorized agent, or by plaintiff and such agent acting in his own behalf? The cause was tried by the court without a jury, and resulted in findings and conclusions respecting the disputed question referred to, in substance, as follows:

(1) January 20, 1896, and during all the times referred to in the findings, A. W. Dibble was the duly-authorized agent

of the defendant and other insurance companies doing business in the state of Wisconsin.

(2) January 5, 1894, such agent insured the property described in the complaint for $500 for the term of one year. Before and after the issuing of the policy, it was agreed between plaintiff and defendant, acting by such agent, that upon the expiration thereof defendant should issue a new policy in its place on the same terms and conditions, and without notice to plaintiff, and should thereafter, from year to year, keep up such insurance, subject, however, to its right to cancel any policy on giving due notice thereof, so as to enable plaintiff to obtain other insurance.

(3) Pursuant to such agreement, January 5, 1895, the policy issued as aforesaid was renewed by defendant, but when such second policy expired, though defendant was willing to renew it, by mistake of its agent the renewal policy was not issued, or any notice given to plaintiff so he could obtain other insurance, and by reason thereof, and the destruction of the property by fire January 20, 1896, plaintiff was damaged in the sum of $500.

(4) The regular course of business of the defendant and its agent, from a time prior to January 5, 1894, was to renew insurance upon buildings owned by plaintiff, without notice to him of intention so to do, and without directions from him in regard thereto, the same being done pursuant to the agreement aforesaid, that plaintiff's insurance should not be allowed to expire without renewals, unless one of the parties to the agreement should give notice to the other, and plaintiff relied on such agreement, which was to continue until terminated by notice of one of the parties to the other of a discontinuance thereof.

From the foregoing the court concluded as a matter of law that a binding agreement was made between plaintiff and defendant, requiring the latter, without notice to the former, to renew the policy expiring January 5, 1896, and

that by failure so to do it became liable to plaintiff for the loss of his property by fire, to the amount of $500, the same as if a policy had been duly issued as agreed upon.    Exceptions were taken to the findings of fact as not supported by the evidence.    Defendant appealed from the judgment which was entered in accordance with the determination aforesaid.

*H. W. Chynoweth*, for the appellant.

For the respondent there was a brief by *Jones & Stevens*, and oral argument by *B. W. Jones*.    To the point that there was a complete contract to reinsure, and that an oral contract to renew or to reinsure was binding upon the company, they cited *King v. Hekla F. Ins. Co.* 58 Wis. 508; *Stehlick v. Milwaukee M. Ins. Co.* 87 id. 322; *Campbell v. American F. Ins. Co.* 73 id. 100; *Zell v. Herman F. M. Ins. Co.* 75 id. 521; *Scott v. Home Ins. Co.* 53 id. 238; *Ellis v. Albany City F. Ins. Co.* 50 N. Y. 402; *Baker v. Comm. U. Ass. Co.* 162 Mass. 358; *Trustees of First Baptist Church v. Brooklyn F. Ins. Co.* 19 N. Y. 305; *John R. Davis Lumber Co. v. Scottish U. & N. Ins. Co.* 94 Wis. 472; *N. W. Iron Co. v. Ætna Ins. Co.* 23 id. 160.

MARSHALL, J.    The sole question for consideration is, Does the evidence warrant the findings of the trial court that an oral agreement was made between plaintiff and defendant, whereby the latter became bound to keep plaintiff's property, described in the policy of January 5, 1894, insured for $500 on the terms and conditions mentioned therein, till released therefrom by plaintiff, or by reasonable notice to him by defendant of an intention to discontinue such insurance?    Such findings are based on the evidence of plaintiff and A. W. Dibble, defendant's agent, that some time in 1893 they entered into an agreement to the effect that Dibble, who was agent for several insurance companies, should look after such insurance as plaintiff might elect to place with him and not allow any policies to expire in his hands with-

out a renewal thereof in the same or some other company.
Plaintiff testified in language substantially as follows: I
stated to Dibble I wanted it distinctly understood that he
would never allow a policy to lapse in his hands; that as
soon as they expired I wanted him to rewrite them; that if
the company he was writing for objected to renewing the
insurance, he should let me know immediately or place the
insurance in another company. He said he would do so.
Dibble testified in language substantially as follows: He
was to give me a line of insurance and I was to keep the
policies renewed in such companies as we should agree upon,
and not to allow any policy to lapse without notice from
either one side or the other. The evidence given further
was to the effect that Dibble placed $500 of insurance on
the property described, in the defendant company, Janu-
ary 5, 1894, pursuant to the aforesaid agreement, and re-
newed such insurance January 5, 1895, and that by over-
sight on his part he failed to renew the same January 5,
1896, or to keep the insurance alive in any other manner,
and that no notice was given by either side to terminate
such arrangement.

The evidence mentioned in the foregoing shows clearly
what occurred between plaintiff and Dibble, upon which the
court found that there was a contract made between plaintiff
and defendant, binding upon the latter, to renew the policy
issued January 5, 1895, or seasonably to notify plaintiff to
the contrary, or place the insurance in some other company.
It is not claimed that the contract, when made, specified
any particular company or companies that should carry the
insurance, or that it was other than an agreement to the
effect that the agent, Dibble, would keep such insurance alive
as plaintiff would place in his agency, till the termination of
the arrangement between them upon reasonable notice of
one side to the other.

It has been repeatedly held by this and other courts, and

is elementary, that a binding oral contract of insurance may be made by an insurance company acting through its authorized agent, without payment of premium, issuance of policy, or report to the company. *John R. Davis Lumber Co. v. Scottish U. & N. Ins. Co.* 94 Wis. 472. No time need be spent on that subject, if it may be said that the question is involved in this case. Suffice it to say that such a contract, to be binding, requires a meeting of minds as to all its material provisions, leaving nothing to be done but to execute it. Was there any such meeting of minds as to the contract in question, or any meeting of minds at all, to which the defendant was a party? There is the turning point of this case.

One of the essential requisites to bind a person as principal, in a contract alleged to have been made by him through an agent, is that it be shown that such agent acted within the scope of his actual or apparent authority for such principal, so understood by the other party to the contract. Unless it be shown that there was a meeting of minds on that point, either at the time of the making of the contract, ·or by subsequent ratification with knowledge of the facts, then the essential element to make a binding contract is wanting. *McDermott v. Jackson,* 97 Wis. 64. If the agent acts in his own behalf, though in the line of his employment for the principal, and the other party deals with him in his personal capacity, the principal is a stranger to the transaction and no more bound by it than if the relation of principal and agent did not exist between them at all.

In the light of the foregoing we have studied the record on this appeal in vain for evidence tending to show that the agent, Dibble, acted for defendant in making the contract with plaintiff to keep his insurance alive. All the direct evidence shows clearly that the arrangement was made by the agent in his own behalf, and that the duties he assumed were those of an agent for plaintiff solely. Not only that, but the terms of the contract and the nature of

the duties it imposed on Dibble are all inconsistent with any reasonable theory that he made the contract as agent for defendant, or that defendant became a party to it. It was stipulated that if, on the expiration of any policy, the agent was not able to renew it in the same company, he was to place the insurance in some other company or seasonably notify plaintiff. It will hardly be claimed that plaintiff and Dibble, or either of them, intended that defendant should be bound, on the expiration of any policy issued by it, to replace the insurance in some other company, in any event. The trust in that regard was obviously reposed in Dibble as plaintiff's agent; yet the contract was entire, so that if defendant was bound by any part, it was bound by all. As another very significant and persuasive circumstance, we note that according to Dibble's testimony, one of the provisions of the contract was that no policy should be allowed to lapse *without notice from either one side or the other.* As the companies had not then been designated, in which the line of insurance plaintiff purposed giving to Dibble would be placed, clearly, the two sides of the agreement were plaintiff and Dibble.

It is needless to continue the discussion, the question being simply one of fact, as to whether the agent Dibble made the alleged contract as agent for the defendant. The conclusion here reached is that there is no evidence in the record to show that defendant was a party to the alleged transaction, either originally or by subsequent ratification, or that such transaction was other than purely a contract between plaintiff and the agent acting in his individual, not representative, capacity. Therefore, the judgment must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint and render judgment in favor of the defendant for costs, to be taxed according to law.