## FERGUSON et al. v. NORTHERN ASSUR. CO. OF LONDON et al.

On a question as to the sufficiency of the evidence to sustain the verdict and judgment, the evidence must be construed most favorably to the successful party.

An insurance agent directed by a fire policy holder to renew the insurance was not insured's agent, as affecting the liability of another company in which a policy was written, but canceled by such agent on the company's order.

An insurance agent directed to renew insurance had no right to select another company.

Insurance contracts are governed by the same legal principles that apply to other contracts.

A fire policy in one company prepared through an insurance agent authorized to renew a policy in another company which was not accepted by insured nor by their authorized agent is unenforceable.

(Opinion filed October 26, 1910.)

Appeal from Circuit Court, Fall River County. Hon. LEVI McGEE, Judge.

Action by Will O. Ferguson and another against Northern Assurance Company of London and another. From a judgment for plaintiffs and from an order denying a new trial, that company appeals. Reversed.

*Martin & Mason,* for appellant. *S. E. Wilson* and *G. M. Cleveland,* for respondents.

WHITING, P. J. This was an action brought to recover $2,000 from the defendant insurance companies, it being claimed that they were jointly liable for same, owing to the destruction of property of plaintiffs upon which plaintiffs claimed they had insurance in such companies. Upon the trial, when plaintiffs rested their case, the defendant German Alliance Insurance Company moved for the dismissal of the action as against it, which motion was granted, and the Northern Assurance Company excepted to such ruling. The Northern Assurance Company then moved for direction of verdict, and the same was denied. This defendant renewed such motion at the close of the evidence, and it was again denied, and a judgment having been recovered by the plaintiffs, and the court having overruled a motion for new trial, the Northern Assurance Company has appealed to this court from such judgment and order denying new trial.

The appellant having questioned the sufficiency of the evidence to sustain the verdict and judgment, it becomes necessary

for us to construe such evidence in . the light most favorable to the respondents. Following such rule, the following facts would appear to have sufficient evidence for their support: On October 12, 1906, one Flannigan, as the local agent for appellant at Hot Springs, S. D., wrote a policy in the appellant company for $2,000 upon the property described in the complaint; which said policy was procured for the plaintiffs by their father. On October 15, 1906, said company by wire ordered this policy canceled, and the same was canceled and sent to the company. The company at that time instructed its said agent not to issue any future policies on this property, and on June 6, 1907, the company, through its special agent, gave Flannigan written instructions not to insure this risk. As soon as the policy was canceled as above mentioned, and on October 16, 1906, Flannigan issued to the plaintiffs a policy in the defendant German Alliance Insurance Company, which policy covered this property and remained in force until October 16, 1907. On October 12, 1907, one of the plaintiffs had a conversation with Flannigan, in which Flannigan desired to renew such insurance, and, after some conversation, it was finally agreed that Flannigan should renew the same, and said plaintiff advised him that he was going to be out of town for a few days,. but for him, Flannigan, to be sure and not let the insurance expire. Plaintiff offered to pay him at that time, but the agent said it would be all right until he returned. At this time, October 12, 1907, Flannigan was the agent of at least three insurance companies, namely, the two defendants, and the Sun Insurance Company. Plaintiffs knew that they were carrying a policy in one of the companies which Flannigan represented, and knew that he · represented several companies, but they did not know the name of the company with which they were then carrying a policy or the other companies for which Flannigan was agent. In the conversation had between the one plaintiff and Flannigan in relation to renewal of insurance, there was nothing said as to what company was to take this insurance, nor as to the amount of the premium. Flannigan on October 14, 1907, wrote up a policy of $2,000 on the property in question, placing such policy with the

appellant company. The risk, by its terms, was to commence at noon on October 17, 1907, and to run one year. Flannigan retained the policy in his office, and sent in a daily report, and upon the morning of October 17, 1907, he received a telegram from the appellant, dated October 16, ordering the cancellation of such policy. In accordance with such telegram, Flannigan canceled such policy before noon on October 17, 1907. He marked the policy, "Canceled by order of company, 10-17-07," placed it in an envelope, and mailed it to appellant, said policy never having been in the possession of either plaintiff. Plaintiffs received no notice that this policy had been written until long after the fire, which fire occurred on October 25, 1907, and which fire destroyed the property described in said policy. After the fire, and on November 5, 1907, plaintiffs made out proof of loss, and sent same to German Alliance Insurance Company, which proof of loss contained the following: "By your policy No. 559 expiring the 16th day of October, 1907, * * * and which said policy was ordered to be re-written by the undersigned insured on the 12th day of October, 1907, which said order was made to your agent G. B. Flannigan at Hot Springs, South Dakota, on the 12th day of October, 1907." It was not until January 30, 1908, that plaintiffs first sent proof of loss to the appellant company.. In their complaint, plaintiffs alleged a contract with the German Alliance Insurance Company on October 12, 1907, through their agent, whereby such agent agreed to renew the policy dated October 16, 1907, and further alleged that said agent, instead of complying with said contract or agreement, executed the policy in appellant company in place thereof, and plaintiffs prayed a joint judgment in the sum of $2,000.

The question of the sufficiency of the evidence to sustain the verdict is fairly raised by the assignments of error, and is the only question we deem necessary for our consideration, thus leaving as the sole matter to be determined the liability of appellant under the facts proven.

It is the claim of the respondents that by the conversation of October 12, 1907, the respondents made Flannigan their special

agent to renew their insurance in one of his companies and to retain such policy until the plaintiff, who ordered the insurance, returned to the city. In this respondents are clearly in error. Flannigan was in no sense the agent of respondents for any purpose whatsoever. This is not a case where an insurance agent representing several companies was directed to write insurance in one of his companies, such company to be selected by him. He was directed to renew insurance then in force. It mattered not that respondent, when talking to him, was ignorant of what company had written such policy, respondent was dealing with him as the agent only of the company which then held the risk, and in no sense as the agent of any other company or companies, and Flannigan had no more authority to select any other company than if respondent had specifically named the German Alliance Insurance Company in directing the renewal of the insurance. Flannigan knew what company was carrying this insurance even if respondents did not. Suppose the property had not burned, and, after some time had elapsed, the agent had called upon respondents to pay the premium named in policy, upon what possible theory could respondents be held liable? Suppose that, after Flannigan had returned appellant's policy to it, he had, on October 17, 1907, issued a policy in the German Alliance Insurance Company, could there be any question of its validity? Certainly not. Respondents could not have denied liability for premium on such policy. Yet under respondents' theory of special agency, as soon as Flannigan wrote the policy in appellant company, it became a valid contract and remained in full force, thus terminating any power in Flannigan to bind respondents for premium for another policy. The same fundamental rules and principles underlie the laws relating to insurance contracts as to other contracts. If A. were an agent for several periodicals and B. was a subscriber for "Munsey," and A. should come to him asking him to renew his subscription and B. should direct A. not to let his subscription expire, could it be held for one moment that A. would have any authority to select another magazine for B., even if the terms for it were the same as for the "Munsey?" Certainly not. And if A.

should have the right to sign contracts for subscriptions for the various companies, and should sign one to B. for such other magazine and lay the same in his desk, would the same ever have any validity until in some manner accepted by B.? And if, before it was accepted by B., the company canceled such order, could B. recover of such company in a suit based upon such order? Certainly not. Flannigan was not instructed to retain such policy as he should issue. There is not a word of testimony to support such a contention. While the German Alliance Insurance Company might have been bound, if the agent had written the insurance in their company, even though such agent had retained possession of the policy, this would have been owing to the complete oral agreement entered into with such company through its agent. Nothing, however, but acceptance by respondents of the policy issued by appellant could give it validity, which acceptance must be by one of the respondents or some one duly authorized. Respondents are not in any position to complain of appellant. They saw fit to trust the agent of the German Alliance Insurance Company to write the insurance offered, and, if the agreement entered into with him was not sufficient upon which to recover of the company they were dealing with, they should place the cause of their loss, where it belongs, to faith wrongfully placed in Flannigan as agent of such insurance company.

For cases illustrating the principles underlying this cause, see Davis Lumber Co. v. Scottish Union & National Ins. Co., 94 Wis. 472, 69 N. W. 156; Sheldon v. Heckla Fire Ins. Co., 65 Wis. 436, 27 N. W. 316; 16 Ency. Law, 855; 19 Cyc. 603; Hartford Fire Ins. Co. v. Whitman, 75 Ohio St. 312, 79 N. E. 459. In this last case it was said, citing Elliott on Ins. 31: "In the absence of an oral agreement for insurance prior to the policy, if a policy has been duly executed, but has not passed out of the possession of the insurer or his agent and no payment of premium has been made, the contract is prima facie incomplete, and it rests upon the party who asserts that there is a contract to show that the policy became operative by the intention of both parties." In Davis Lumber Co. v. Scottish Union & National Ins. Co., supra, it is

well said: "An infallible test is to determine whether both parties are bound. Unless the insured is obligated to pay the premium on tender of the policy, the company is not to deliver it, or to pay the loss if one occurs." The policy in appellant company never having gone into force, the provision therein to the effect that it could not be canceled except on five days' notice becomes absolutely immaterial.

The judgment and order denying a new trial are reversed.