Gross and wife, Appellants, vs. Merrimac, Prairie du Sac, Sumpter, Honey Creek & Troy Mutual Farmers Fire Insurance Company, Respondent.

*June 2—June 22, 1936.*

For the appellants there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *J. H. Hill.*

For the respondent the cause was submitted on the brief of *Grotophorst, Quale & Langer* of Baraboo.

FRITZ, J. The barn in question was upon a farm which plaintiffs had contracted to sell to Farnsworth, who contracted to keep the buildings insured for $500, payable to plaintiffs as their interest might appear. Farnsworth procured a fire insurance policy from the defendant, but it had no provision for payment to plaintiffs. Because there was no such provision, plaintiffs had trouble collecting for a fire loss payable upon the destruction of the farmhouse in November, 1931. But after a conference in January, 1932, between the plaintiff, Herbert B. Gross, and W. L. Frese, the president of the defendant, the plaintiffs with the defendant's aid obtained Farnsworth's assignment of the insurance then payable, and it was thereupon paid to the plaintiffs. However, at that conference, Gross informed Frese that the plaintiffs still had an insurable interest after applying that payment, and that they wanted defendant to protect that interest by fire insurance on the remaining buildings.

There is no material conflict in the evidence as to what was said in respect to such protection at that conference. Gross testified that when he said to Frese, "The reason I came down here was to have my interest insured in these buildings that is still left on the property," Frese replied, "There is still insurance on these buildings under the policy of Mr. Farnsworth;" that Gross then said, "I don't consider that that policy is ample because the other time you required me to get a written order and I want it understood this time that we do not have to get any written order; that the policy will be issued to me so that my interest will be protected;" that Frese replied, "Well, I don't know about that. I think that policy can be fixed so that it will protect you. I will see the company and find out;" that Gross asked, "Is it necessary for me to see any other member of the company?" that Frese replied, "No, I will see to that," and that Gross could rest assured that he was fully protected on those buildings;

and that Gross said, "In the contract Farnsworth is supposed to pay the assessments, but if for any reason he fails to pay those assessments I will." Gross further testified that that was the only talk he had with Frese or any other officer of the company prior to the last fire (on November 22, 1933); that he does not remember any talk with Frese as to the amount of the premium or assessment; that he left that to Frese's judgment; that there was. no talk as to how long the policy was to run or the amount of the insurance to be carried on the balance of the property; that he knew they did not consider it necessary to issue a separate policy; that although he never heard from Frese and no policy was issued to him, he never wrote to find out if they were going to issue a policy; and that he never made any oral demand on any officer of the company, excepting Frese, that it issue such a policy. Furthermore, on an adverse examination of Gross before trial, he answered as follows:

"Q. In your talk with Frese was anything said as to whether or not a new and separate policy would be made out in your name? A. He didn't say that there would. . . .

"Q. Did he say that any new policy would be entered into in your name? A. No, he didn't.

"Q. And you didn't ask him for one? A. No, I didn't ask him for one.

"Q. Did you ask him for a separate policy? A. I don't know if I did."

The court, in its decision, said: ". . . The right of recovery by the plaintiffs depends upon whether the plaintiff H. B. Gross . . . and W. L. Frese, acting as president of the defendant insurance company . . . did . . . agree upon the terms of a contract which the plaintiffs can now legally enforce as against the defendant insurance company. If as a result of that conversation there was a meeting of their minds so that a legal enforceable contract can be spelled out of that conversation, then the plaintiffs can recover. If not,

then they cannot recover. The same legal rules apply to the making of a contract for insurance as apply to the making of any other contract. In either case there must be a sufficient meeting of the minds of the parties on the terms of the proposed contract so that the courts can make findings from the conversation to such a degree of certainty as will be necessary to carry out the intentions of the parties and so that a judgment can be entered in case of a breach by either party of the performance of that part of the contract to be performed by such party. . . . [Citing *Whitman v. Milwaukee Fire Ins. Co.* 128 Wis. 124, 107 N. W. 291.] . . . In the case at bar the plaintiffs relied upon a contract of insurance which they claim was entered into between said Gross and said Frese in his capacity as president of the defendant insurance company. Plaintiffs do not rely upon the policy issued to said Farnsworth under date of December 31, 1929. It seems to this court that the conversation had between said Gross and Frese on January 6, 1932, fails to form any basis upon which the following necessary elements can be founded in order to entitle the plaintiffs to recover, to wit: (1) No amount of insurance was agreed upon as a total insurance on all the buildings combined; (2) no amount of insurance was agreed upon as to any one building; (3) the term in years of the policy was not agreed upon; (4) no appraisal had been or was thereafter made as required by the by-laws; (5) no undertaking was given and no membership fee was paid by the plaintiffs as required by the by-laws of the defendant insurance company. . . . It is clear from the testimony that there was no understanding between said Gross and said Frese that the plaintiffs were protected by insurance from the date of the conversation on January 6, 1932. . . ." Following that decision, the court filed findings of fact upon which it concluded that no contract of insurance of sufficient certainty and definiteness to be enforceable in

law by the plaintiffs had been entered into between them and the defendant.

The court's determination that Gross and Frese did not agree and that there was no meeting of the minds of the parties upon some of the essential terms of a contract of insurance, and that, therefore, no contract of sufficient certainty and definiteness' so as to be enforceable in law by the plaintiffs was ever entered into between them and the defendant, was certainly not against the clear preponderance of the evidence. On the contrary, Gross'—as well as Frese's—testimony conclusively established that at their conference in January, 1932, Frese did not agree or consent to the issuance of a policy by the defendant directly to the plaintiffs; and that the defendant never consented to enter into a contract with them for such a policy.

There is no proof whatsoever that Frese promised or agreed that the defendant would enter into a new contract of insurance between solely the plaintiffs and the defendant. At best, the fact most favorable to the plaintiffs is that, although Frese consistently stated he did not consider a new policy necessary, he did say that the plaintiffs would be protected under the Farnsworth policy, and that he would take it up with the defendant to make sure. Those statements entitled plaintiffs to expect Frese to arrange to protect them under the Farnsworth policy, but they were not entitled then to believe that Frese had thereby entered into a contract *in præsenti* under which the plaintiffs became entitled then and there to protection under a new policy issued directly to them. Because of the undisputed fact that Gross well knew that Frese definitely had in mind that it was unnecessary to issue such policy, it cannot be held that there was a sufficient meeting of the minds to entitle plaintiffs to rely upon an issuance thereof to them. To hold otherwise would be in disregard of the established rule that "one who seeks to recover

upon an oral contract for insurance assumes the burden of establishing the terms of the contract, and that 'the evidence required to show such meeting of minds, when the nature of the contract is of such extraordinary character as to that of an oral one of insurance, must necessarily be pretty definite.' " *Neuberger v. Aid Association for Lutherans,* 207 Wis. 133, 136, 240 N. W. 885; *John R. Davis Lumber Co. v. Scottish Union & National Ins. Co.* 94 Wis. 472, 474, 69 N. W. 156; *Whitman v. Milwaukee Fire Ins. Co., supra.*

The appellants contend also that the defendant ratified or became estopped to deny the existence of a contract of insurance between them and the defendant by reason of its subsequent acceptance of $5.50 in payment of an assessment, and its sending of the form for a proof of loss to Gross after the last fire, and its acceptance thereof upon execution by Gross. The evidence shows that subsequent to the conference in January, 1932, upon the levy of an assessment by the defendant against all of its policyholders, it assessed $5.50 as payable under the policy issued to Farnsworth, but that there was never any assessment under any policy issued to the plaintiffs. As Frese had been told by Gross that if Farnsworth failed to pay his assessment, Gross would pay it for him, the defendant notified Gross' father when Farnsworth failed to pay the $5.50 assessment. Thereupon, Gross' father, acting as plaintiffs' agent, paid that assessment with knowledge that it was levied under the Farnsworth policy, and that that policy also covered Farnsworth's personal property. Because of that additional coverage, the father then informed the defendant that on assessments made thereafter, he would pay only on the buildings and not on the personal property. Under those circumstances, that payment of $5.50 was obviously not made on account of a policy issued to the plaintiffs, and the acceptance thereof in payment of an assessment under the Farnsworth policy cannot be considered a

ratification of an alleged contract of insurance directly between the defendant and the plaintiffs. Likewise, the sending of a form for a proof of loss because of the destruction of a barn covered by the Farnsworth policy, and the defendant's receipt of that proof of loss, upon the execution and return thereof by Gross, did not constitute a ratification of such alleged contract or estop the defendant from denying the existence thereof.

As plaintiffs do not rely upon or seek to recover under the policy issued to Farnsworth in December, 1929, it is not necessary to determine whether they could have recovered under that policy if Frese agreed orally to protect them by the insurance payable thereunder. Such protection could have been effected with Farnsworth's consent by attaching to his policy either a simple loss-payable or option mortgage clause for the payment of the loss to the mortgagees, or a standard mortgage clause in their favor. Farnsworth, however, had not consented to either form. But, in addition to having his consent, it would have been necessary, in order to have an obligation enforceable by the plaintiffs, to have a sufficient meeting of the minds as to which form was in fact adopted because there are substantial differences in the legal effect of those clauses, and if but the simple loss-payable or option mortgage clause had been adopted, there would still have been nothing payable under the Farnsworth policy to the plaintiffs because the right to recover thereunder was defeated by the fact that he had wilfully set the fire to collect insurance. *Bellman v. Home Ins. Co.* 178 Wis. 349, 351, 189 N. W. 1028; *Keith v. Royal Ins. Co.* 117 Wis. 531, 94 N. W. 295; *Wunderlich v. Palatine Fire Ins. Co.* 104 Wis. 395, 402, 80 N. W. 471.

*By the Court.*—Judgment affirmed.